THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _CIVLR 5.4 7.1(a)(1)_
(Rule Number/Section)

FILED ____ LODGE
RECEIVED ____ COPY

APR 12 2016

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| THE ARIZONA LIBERTARIAN PARTY AND MICHAEL KIELSKY, )<br><br>Plaintiffs, )<br><br>v. )<br><br>MICHELE REAGAN, )<br><br>Defendant. ) | **COMPLAINT**<br><br>**Civil Action No.**  CV-16-1019-PHX-DGC |

## INTRODUCTION

Plaintiffs Arizona Libertarian Party ("AZLP") and its Chairman Michael Kielsky

(together, "the Libertarians") bring this action pursuant to 42 U.S.C. § 1983, to vindicate rights

guaranteed to them by the First and Fourteenth Amendments to the United States Constitution.

The Libertarians specifically challenge the constitutionality of two provisions of Arizona law,

A.R.S. §§ 16-321 and 16-322, which establish the requirements that political parties must meet

to place their candidates on Arizona's primary election ballot. These provisions formerly enabled

candidates to appear on the primary ballot by submitting nomination petitions with a number of

signatures defined as a percentage of their party's qualified registered voters in the relevant

jurisdiction. In 2015, however, the provisions were amended, such that they now define the

signature requirements as a percentage of all "qualified signers" in the relevant jurisdiction – a

pool defined to include independent and unaffiliated voters. As applied to the Libertarians –

though not to the major parties – this drastically increased the number of signatures required. In

general, the new requirements for the Libertarians are at least 20 times greater than the old ones,

depending on the office, and in many cases much greater.

Sections 16-321 and 16-322, as amended, violate the Libertarians' First Amendment rights on several grounds. First, they impose unconstitutionally severe signature requirements under the settled precedent of the Supreme Court of the United States. Second, they violate the Libertarians' freedom of association, because they compel AZLP, as a practical matter, to rely on non-members for purposes of nominating its own partisan candidates. And third, they violate the Libertarians' right to establish and develop a new political party, by thwarting AZLP's ability to perform its core function of choosing candidates and placing them before the electorate.

Sections 16-321 and 16-322 also violate the Libertarians' Fourteenth Amendment right to equal protection of the law. The provisions are facially neutral, in that they apply to all political parties that qualify for continued representation on Arizona's ballot – a status currently held only by the Republican, Democratic and Libertarian parties – but the severe burdens they impose fall on AZLP alone. Because the Republican and Democratic parties are much older, they have many times more members than AZLP (or any other minor party in Arizona), and their candidates are easily able to satisfy the signature requirements by relying entirely on their own members. Consequently, the signature requirements are not unconstitutionally severe as applied to the major parties; they do not compel the major parties to associate with non-members; and they do not interfere with the major parties' ability to perform their core functions. These severe burdens fall on the Libertarians alone. In fact, the amendments to Sections 16-321 and 16-322 generally decreased, or increased only slightly, the signature requirements for major party candidates, while making them practically insurmountable for the Libertarians. Had the Legislature specifically intended to enact legislation that would impose severe and unequal burdens on the Libertarians alone, it could hardly improve upon its amendments to Sections 16-321 and 16-322.

2

In this action, the Libertarians seek declaratory relief and injunctive relief as necessary to enjoin enforcement of Sections 16-321 and 16-322 on a preliminary basis, in time for the Libertarians to participate in Arizona's primary election on August 30, 2016, and on a permanent basis. They assert their claims against the Defendant, Secretary of State of Arizona Michele Reagan ("Secretary Reagan"), in her official capacity only.

## PARTIES

1.      Plaintiff Arizona Libertarian Party is the state party affiliate of the national Libertarian Party, which was founded in 1971 and is the third largest political party in the nation. AZLP promotes a comprehensive platform that addresses issues of importance to all Arizonans, based upon the Libertarian Party's fundamental commitments to a free-market economy, civil liberties and personal freedom, and a foreign policy of non-intervention, peace and free trade. AZLP's business address is 4635 South Lakeshore Drive, Tempe, Arizona, 85282.

2.      Plaintiff Michael Kielsky is the Chairman of AZLP. In that capacity, his duties include building support for AZLP and recruiting candidates to run as nominees of AZLP. Plaintiff Kielsky has also run for Maricopa County Attorney as the nominee of AZLP, and appeared on Arizona's general election ballot in 2008, 2010 and 2012. In both 2010 and 2012, Plaintiff Kielsky received more than 25 percent of the vote in the general election. Plaintiff Kielsky's business address is 4635 South Lakeshore Drive, Tempe, Arizona, 85282.

3.      Defendant Michele Reagan is Secretary of State of Arizona. As such, Defendant Reagan serves as Chief Election Officer for Arizona, with the statutory duty to enforce Arizona election law, including the provisions challenged herein. Defendant Reagan is named in her official capacity only. Her business address is Office of the Secretary of State, Elections

Division, 1700 West Washington Street, 7th Floor, Phoenix, Arizona, 85007-2808.

## JURISDICTION AND VENUE

4.      Venue is proper in this Court because all Plaintiffs are residents of Arizona, and the Defendant is a state official who maintains offices in Phoenix, Arizona. This Court has personal jurisdiction over the Defendant because she is a public official of the state of Arizona, and because she is a resident of Arizona.

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims arise under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## FACTUAL BACKGROUND

### The Arizona Election Code

6.      Arizona provides one method for a political party to become qualified to place its candidates on the general election ballot. The party must submit a nomination petition signed by a number of qualified electors equal to not less than one and one-third percent of the total votes cast for governor at the last preceding general election. *See* A.R.S. § 16-801(A). The qualified electors must be registered in at least five different counties, and at least ten per cent of the required total number of them must be registered in counties with populations of less than five hundred thousand persons. *See id.*

7.      A political party that successfully submits such a petition becomes qualified and is entitled to its own official party ballot at the primary election, as well as a ballot column at the succeeding general election. *See* A.R.S. § 16-801(B). The party remains so qualified through the next two regularly scheduled elections. *See id.* Thereafter, the party is ineligible for the ballot

4

unless it qualifies for continued representation pursuant to A.R.S. § 16-804. *See id.* If it fails to

qualify pursuant to Section 16-804, the party must file a new petition for recognition under

Section 16-801. *See id.*

8.      Section 16-804 provides that a political party qualifies for continued

representation on the official ballot if in the preceding general election for governor, presidential

electors, county attorney or mayor, whichever applies, it received at least 5 percent of the total

votes cast for that office. *See* A.R.S. § 16-804(A). Alternatively, such a party qualifies for

continued representation on the official ballot if, by October 1 of the year immediately preceding

a general election for state or county offices, or 155 days prior to a primary election for city or

town offices, its registered members comprise at least two-thirds of one percent of the total

registered electors in the relevant jurisdiction. *See* A.R.S. § 16-804(B).

9.      A political party that is qualified to place its candidates on the official ballot must

do so through the primary election process. *See* A.R.S. § 16-301. If the party fails to do so, it

may not place its candidates on the general election ballot, *see* A.R.S. § 16-302, and

consequently, it cannot qualify for continued representation pursuant to Section 16-804(A).

10.      To appear on a party's primary election ballot, a candidate must timely submit a

nomination paper that provides the candidate's name, address, partisan affiliation, office sought

and related information. *See* A.R.S. § 16-311. The candidate also must submit a nomination

petition containing the required number of signatures of qualified electors. *See* A.R.S. § 16-314.

### The Challenged Provisions: Sections 16-321 and 16-322

11.      Section 16-321 establishes the requirements and restrictions that govern who may

sign a nomination petition. *See* A.R.S. § 16-321. Section 16-322 establishes the number of

signatures that nomination petitions must include for each office. *See* A.R.S. § 16-322.

12.     Prior to its amendment in 2015, Section 16-321 provided that nomination petitions must be signed by "qualified electors," subject to certain other restrictions. It did not otherwise define a "qualified signer" of a nomination petition.

13.     Prior its amendment in 2015, Section 16-322 defined the number of signatures a candidate's nomination must include as a percentage of the total voter registration of the candidate's party in the relevant jurisdiction. For example, pursuant to Section 16-322(A)(1), a candidate for United States Senator or a statewide office was required to submit signatures from "a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to at least <u>one-half of one percent of the voter registration of the party of the candidate</u> in at least three counties in the state, <u>but not less than one-half of one percent nor more than ten percent of the total voter registration of the candidate's party</u>" (emphasis added).

14.     The other sub-parts of Section 16-322(A), sub-parts (2) through (12), which specify the signature requirements for candidates for representative in Congress, the state legislature and various local offices, similarly defined the number of signatures required based on the size of a party's membership in the relevant jurisdiction. For example, Section 16-322(A)(2) required that a candidate for representative in Congress submit signatures from "a number of qualified voters who are qualified to vote for the candidate whose nomination petition they are signing <u>equal to at least one percent but not more than ten percent of the total voter registration of the party of the candidate in the district from which such representative shall be elected</u>" (emphasis added). Similarly, Section 16-322(A)(3) defined the number of signatures required of

a candidate for the state legislature as "equal to at least one percent but not more than three percent of the total voter registration of the party designated in the district from which the member of the legislature may be elected" (emphasis added).

15.     As amended in 2015, Section 16-321 now defines a "qualified signer" of a political party's nomination petitions as a member of that party, a member of another party not qualified for continued representation on the ballot under Section 16-804, or a qualified independent or unaffiliated elector. *See* A.R.S. § 16-321(F).

16.     As amended in 2015, Section 16-322 now defines the signature requirements for each office not as a percentage of a party's registered voters in the relevant jurisdiction, but as a percentage of all "qualified signers" in the relevant jurisdiction. *See* A.R.S. § 16-322(A).

17.     A copy of H.B. 2608, the legislation that enacted the foregoing amendments, which tracks the changes it made to Sections 16-321 and 16-322, is attached hereto as Exhibit A.

18.     In March 2016, Secretary Reagan published the signature requirements that now apply to partisan candidates pursuant to Sections 16-321 and 16-322, following their amendment in 2015. The new signature requirements, which are available on the Secretary of State's website at http://www.azsos.gov/elections/running-office, are attached hereto as Exhibit B.

19.     Taken together, the 2015 amendments to Sections 16-321 and 16-322 drastically increased the signature requirements these provisions impose on the Libertarians. For example, prior to its amendment in 2015, Section 16-322 required that a Libertarian candidate for United States Senate or statewide office submit a nomination petition with 134 signatures. That requirement has now increased to 3,023 signatures – a burden 22.55 times greater than the prior requirement. *See* Ex. B.

7

20.     Under Section 16-322 prior to its amendment in 2015, Libertarian candidates for Congress were required to submit between 22 and 41 signatures. Under that provision as amended, such candidates now must submit between 527 and 782 signatures. *See* Ex. B.

21.     Libertarian candidates for the state legislature also face drastically increased signature requirements. For example, under Section 16-322 prior to its amendment, the Libertarian candidate in Legislative District ("LD") 1 was required to submit 10 signatures, but now must submit 235 – a burden 23.5 times greater than the prior requirement. In LD 5, such a candidate needed 7 signatures under the old law, but 243 signatures under the new law – a burden 34.7 times greater than the prior requirement. These increased burdens are typical of those that all Libertarian legislative candidates now face. *See* Ex. B.

22.     Libertarian candidates for countywide office face similarly drastic increases. In Maricopa County, for example, to appear on the primary election ballot, such a candidate was required to submit 72 signatures in 2012 and 87 signatures in 2014, but now must submit 1,881 signatures in 2016. These signature requirements, which are available on the Maricopa County Recorder's website at http://recorder.maricopa.gov/elections/signatures.aspx, are attached hereto as Exhibit C.

23.     The increased signature requirements for Libertarian candidates in Maricopa County are typical of those that Libertarian candidates now face in all Arizona counties. In Coconino County, for example, a Libertarian candidate for countywide office was required to submit 16 signatures in 2014, but now must submit 262 signatures to appear on the primary election ballot in 2016. *See Signature Requirements, 2016 Election, Coconino County, Arizona*, available at http://www.coconino.az.gov/DocumentCenter/View/12008 (last visited April 8,

2016). In Pima County, the requirement increased from 19 to 409 signatures. *See Partisan Signature Requirements, Primary Election – August 30, 2016*, available at http://webcms.pima.gov/UserFiles/Servers/Server_6/File/Government/elections/Candidates%20and%20PACs/Combined%20Signature%20Req.pdf (last visited April 8, 2016).

24.     Libertarian candidates for local offices also face exponential increases in the signature requirements they must meet. *See* Ex. C.

### The Disparate Impact of the New Signature Requirements on the Libertarians

25.     As of January 1, 2016, AZLP had 25,807 registered voters, while the Democratic Party of Arizona had 917,411, and the Republican Party of Arizona had 1,105,521. *See State of Arizona Registration Report – 2016 January Voter Registration*, available at http://www.azsos.gov/sites/azsos.gov/files/2016_january_voter_registration_statistics.pdf (last visited April 8, 2016). Because the Democrats and Republicans have so many registered voters, compared to the Libertarians, the amendments to Sections 16-321 and 16-322 typically caused only a slight increase, if any, to the signature requirements imposed on their candidates.

26.     In 2014, Section 16-322 required a Democratic candidate for United States Senate or statewide office to submit 4,804 signatures, and now requires that candidate to submit 5,341 signatures – an increase of only 11.17 percent. A Republican candidate for United States Senate or statewide office was required to submit 5,651 signatures in 2014, and now must submit 5,790 signatures – an increase of only 2.45 percent. *See* Ex. B; *see also 2014 Election, Number of Signatures Required for Statewide Offices Based on Partisan Voter Registration Totals Statewide on March 1, 2014*, available at http://apps.azsos.gov/election/2014/Info/Statewide_Partisan_Signature_Requirements.pdf (last

visited April 8, 2016).

27.     Major party candidates for Congress also face only slight increases, if any, in their signature requirements under Section 16-322. For example, a Democratic candidate in Congressional District ("CD") 1 was required to submit 1,395 signatures in 2014, and now must submit 1,323 – a slight decrease. A Republican candidate for Congress in CD 1 was required to submit 1,117 signatures in 2014, and now must submit 1,196 signatures – an increase of only 7.07 percent. These modest changes are typical of the impact of Section 16-322, as amended, on major party candidates in all congressional districts. *See* Ex. B; *see also Partisan Signature Requirements for Congressional Districts (Based on March 1, 2014 Voter Registration Statistics)*, available at

http://apps.azsos.gov/election/2014/Info/Congressional_Partisan_Signature_Requirements.pdf

(last visited April 8, 2016).

28.     Major party candidates for state legislature face similarly slight increases, and in many cases decreases, to the signature requirements they now must meet under Section 16-322, as compared to those imposed in 2014. For example, the signature requirements actually decreased under 16-322, as amended, for the Democratic candidates in LD 2, 3, 4, 7, 9, and 10, and decreased for the Republican candidates in LD 1, 5, 6, 9, 10, 11, 12, 13, 15, 17, 18, 22, 23, 25 and 28. In only one instance did the signature requirement so much as double for a major party candidate – the Republican in legislative district 27. For Libertarian legislative candidates, by contrast, the signature requirement increases ranged from 1,284.61 percent in LD 26 to 3,371.42 percent in legislative district 5. *See* Ex. B; *see also Partisan Signature Requirements for Legislative Districts (Based on March 1, 2014 Voter Registration Statistics)*, available at

http://apps.azsos.gov/election/2014/Info/Legislative_Partisan_Signature_Requirements.pdf (last

visited April 8, 2016).

29.     Major party candidates for countywide and local offices likewise face only slight

increases, and in many cases, decreases to their signature requirements under Section 16-322 as

amended.

30.     There is only one other political party that is formally organized under Arizona

law – the Arizona Green Party ("AZGP"). AZGP places its candidates on the primary election

ballot by submitting a petition to qualify as a new political party pursuant to Section 16-801. As

such, AZGP need not comply with the signature requirements that Section 16-322 imposes on the

Libertarians. Instead, Section 16-322 imposes a separate, and much lower, signature requirement

for parties that are not entitled to continued representation pursuant to Section 16-804. *See*

A.R.S. § 16-322(C). Under Section 16-322(C), AZGP's candidates may appear on the primary

election ballot by submitting a nomination petition with signatures equal in number to "one-tenth

of one percent of the total vote for the winning candidate or candidates for governor or

presidential electors at the last general election within the district." *See id.*, *see also* Ex. B.

31.     Because the 2015 amendments to Sections 16-321 and 16-322 generally created

little or no increase to the signature requirements that major party candidates must meet, and do

not affect AZGP at all, the severe and unequal burdens they impose fall on the Libertarians alone.

**Injury to Plaintiffs**

32.     In recent elections, AZLP has routinely placed its candidates for local, county and

statewide office on the primary election ballot. The new signature requirements established by

Section 16-322 exponentially increase the burdens imposed on these candidates, transforming a

formerly reasonable regulation into one that creates a practically insurmountable barrier to ballot access. Such burdens are detailed at length in the First Declaration of Kim Allen, the First Declaration of Ricky T. Fowlkes, the First Declaration of Ernest Hancock, the First Declaration of Jack Heald, the First Declaration of Michael Kielsky, the First Declaration of Christopher Rike, the First Declaration of David Schlosser and the First Declaration of Michael Shoen, which are attached hereto as Exhibit D.

33.     Kim Allen was AZLP's 2012 candidate for U.S. House in CD 1, and received approximately 15,500 votes in the general election, or 7 percent of the total. Mr. Allen wants to run for public office again as a Libertarian, but he cannot qualify for AZLP's primary election ballot in CD 1 in 2016 unless he submits nomination petitions with 636 valid signatures – a requirement equal to 25.75 percent of the registered Libertarian voters in CD 1. To run instead as a state legislative candidate in LD 11, Mr. Allen must submit 220 valid signatures – a requirement equal to 26.12 percent of registered Libertarian voters in LD 11. *See* Allen Dec. ¶¶ 8-10.

34.     Ricky T. Fowlkes was AZLP's candidate for Arizona Corporation Commission in 1988, 2004, 2006 and 2010. He wants to run for that office again as AZLP's nominee, but he cannot qualify for AZLP's primary election ballot in 2016 unless he submits nomination petitions with 3,023 valid signatures – a requirement equal to 11.9 percent of registered Libertarian voters in Arizona. *See* Fowlkes Dec. ¶¶ 3-5.

35.     Ernest Hancock has run for several offices as AZLP's nominee, including Secretary of State, U.S. House, U.S. Senate and Maricopa County Recorder. He wants to run for office again as AZLP's nominee, but he cannot qualify for AZLP's primary election ballot as a

candidate for statewide office in 2016 unless he submits nomination petitions with 3,023 valid signatures – a requirement equal to 11.9 percent of registered Libertarian voters in Arizona. *See* Hancock Dec. ¶ 2.

36.     Jack Heald was AZLP's 2006 nominee for state representative in LD 20, and received 12,857 votes in the general election, or 18.5 percent of the total. Mr. Heald wants to run for public office again as a Libertarian, but he cannot qualify for AZLP's primary election ballot in 2016 in LD 18 (where he now resides) unless he submits nomination petitions with 356 valid signatures – a requirement equal to 30.53 percent of the registered Libertarian voters in LD 18. To run instead as a candidate for U.S. House in CD 9, Mr. Heald must submit 675 valid signatures – a requirement equal to 18.43 percent of registered Libertarian voters in CD 9. *See* Heald Dec. ¶¶ 2-5.

37.     Michael Kielsky has run for several offices as AZLP's nominee, including three separate races when he received more than 25 percent of the vote in the general election. Mr. Kielsky has filed the preliminary papers to run in 2016 as AZLP's nominee for Maricopa County Attorney – an office for which he received 27.55 percent of the vote in the 2012 general election, and 25.85 percent of the vote in the 2010 general election. To appear on AZLP's primary election ballot in 2016, however, he must submit 1,881 valid signatures – a requirement equal to 11.18 percent of registered Libertarian voters in Maricopa County. *See* Kielsky Dec. ¶¶ 9-17.

38.     Christopher Rike was AZLP's 2010 nominee for Clerk of County in Maricopa County, and received 48,541 votes in the general election, or 5.43 percent of the total. In 2014, he ran as AZLP's nominee for U.S. House in CD 4, and received 2,531 votes in the general election, or 4.05 percent of the total. Mr. Rike wants to run for office again as a Libertarian, but

he cannot qualify for AZLP's primary election ballot in 2016 for countywide office in Yavapai County (where he now resides) unless he submits 115 valid signatures – a requirement equal to 11.99 percent of registered voters in Yavapai County. To run instead as AZLP's nominee for U.S. House in CD 4 (where he now resides), Mr. Rike must submit 717 valid signatures – a requirement equal to 28.10 percent of registered voters in CD 4. *See* Rike Dec. ¶¶ 2-6.

39.      David Schlosser was AZLP's 2006 nominee for U.S. House in CD 1, and received approximately 5 percent of the vote in the general election. To appear on AZLP's primary election ballot in 2016 in CD 1, Mr. Schlosser would be required to submit 636 valid signatures – a requirement equal to 25.75 registered Libertarians in CD 1. *See* Schlosser Dec. ¶¶ 2-3.

40.      Michael Shoen was AZLP's nominee for U.S. House in CD 9 in 2008, when he received approximately 4.5 percent of the vote in the general election, and in 2010, when he received approximately 5 percent of the vote in the general election. Mr. Shoen wants to run for office again as a Libertarian, but he cannot qualify for AZLP's primary election ballot in 2016 as a candidate for U.S. House in CD 6 (where he now resides) unless he submits 782 valid signatures – a requirement equal to 22.29 percent of registered Libertarians in CD 6. *See* Shoen Dec. ¶¶ 2-4.

41.      The excessive signature requirements that Section 16-322 now imposes on the Libertarians, standing alone, present barriers to AZLP's primary election ballot that Libertarian candidates will be unable to meet, despite their prior success in achieving ballot access in prior elections. *See* Allen Dec. ¶ 6; Fowlkes Dec. ¶ 4; Hancock Dec. ¶ 4; Heald Dec. ¶¶ 3, 6; Kielsky Dec. ¶ 19; Rike Dec. ¶ 4; Schlosser Dec. ¶ 4; Shoen Dec. ¶¶ 3, 5.

42.      The increased signature requirements established by Section 16-322 are especially

onerous because AZLP's candidates cannot, as a practical matter, comply with them unless they obtain signatures from non-members, who have little reason or incentive to help Libertarian candidates obtain ballot access. *See* Allen Dec. ¶ 7; Fowlkes Dec. ¶ 4; Hancock Dec. ¶ 4; Heald Dec. ¶ 3; Kielsky Dec. ¶¶ 5-6; Rike Dec. ¶¶ 3, 7 ; Schlosser Dec. ¶ 4; Shoen Dec. ¶ 5.

43.     Despite non-members' lack of reason or incentive to support AZLP's candidates, the higher signature requirements under Section 16-322 give them far more influence over AZLP's nomination process. Non-members now play a decisive role in determining whom the Libertarians may nominate as their own partisan candidates. *See* Kielsky Dec. ¶¶ 4-7.

44.     The Libertarians have previously needed to defend their party against state efforts to compel their association with non-members for purposes of choosing AZLP's nominees. *See Arizona Libertarian Party v. Bayless*, 351 F.3d 1277 (9th Cir. 2003) (holding Arizona's primary system unconstitutional because it allowed non-members to choose AZLP's precinct committeemen). On remand from the Court of Appeals' decision in *Bayless*, the District Court held that Arizona's entire primary election system was unconstitutional because it allowed non-members to participate in AZLP's process for choosing its own partisan nominees. *See Arizona Libertarian Party v. Brewer*, No. 02-144-TUC-RCC (D. Az. Sept. 27, 2007) (unpublished order).

45.     The Libertarians continue to oppose efforts by the state to compel their association with non-members for purposes of choosing AZLP's nominees. *See* Allen Dec. ¶ 7; Fowlkes Dec. ¶ 5; Hancock Dec. ¶ 5; Heald Dec. ¶ 7; Kielsky Dec. ¶ 5; Rike Dec. ¶ 7 ; Schlosser Dec. ¶ 5.

46.     Failure to comply with the increased signature requirements under Section 16-322 will effectively terminate the Libertarians' participation in Arizona's electoral process. Although

AZLP will continue to qualify for continued representation pursuant to Section 16-804(B), by virtue of the number of its registered voters, it will be unable to place its candidates before the electorate in the general election, because they will not meet the requirements for appearing on the primary election ballot. This will prevent the Libertarians from building and developing their party, and frustrate AZLP's core purpose of disseminating the Libertarian philosophy to the electorate. *See* Kielsky Dec. ¶¶ 3-4.

47.     Because AZLP qualifies for continued representation on the ballot pursuant to 16-804(B), by virtue of its number of registered voters, the Libertarians cannot instead petition for ballot access as a new party pursuant to Section 16-801. Even if they could, becoming a "new" party that no longer qualifies for continued representation on Arizona's ballot would negate all the time, effort and resources the Libertarians have expended to build AZLP as a viable party to date. Further, the burden that a new party must bear to comply with Section 16-801 is itself onerous, and significantly diminishes the party's ability to engage in electioneering and other party-building activity. *See* First Declaration of Angel Torres (attached as Exhibit E).

## COUNT I

### VIOLATION OF RIGHTS GUARANTEED BY FIRST AND FOURTEENTH AMENDMENTS

### (Request for Declaratory Judgment Holding Signature Requirements Imposed By A.R.S. §§ 16-321 and 16-322 Unconstitutional As Applied – Impermissible Burden)

48.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

49.     Sections 16-321 and 16-322, as applied to Plaintiffs, establish signature requirements that exceed the constitutional limitations established by Supreme Court precedent.

50.     Sections 16-321 and 16-322, as applied, violate Plaintiffs' freedoms of speech,

petition, assembly and association for political purposes, as guaranteed by the First and

Fourteenth Amendments.

51.    Such violations injure Plaintiffs.

## COUNT II

### VIOLATION OF RIGHTS GUARANTEED BY FIRST AND FOURTEENTH AMENDMENTS

**(Request for Declaratory Judgment Holding Signature Requirements Imposed By A.R.S. §§ 16-321 and 16-322 Unconstitutional As Applied – Freedom of Association)**

52.    Plaintiffs reassert each preceding allegation as if set forth fully herein.

53.    Sections 16-321 and 16-322 practically compel Plaintiffs to associate with non-members for purposes of nominating their own partisan candidates.

54.    Sections 16-321 and 16-322, as applied, violate Plaintiffs' freedoms of speech, petition, assembly and association for political purposes, as guaranteed by the First and Fourteenth Amendments.

55.    Such violations injure Plaintiffs.

## COUNT III

### VIOLATION OF RIGHTS GUARANTEED BY FIRST AND FOURTEENTH AMENDMENTS

**(Request for Declaratory Judgment Holding Signature Requirements Imposed By A.R.S. §§ 16-321 and 16-322 Unconstitutional As Applied – Right to Form Political Party)**

56.    Plaintiffs reassert each preceding allegation as if set forth fully herein.

57.    Sections 16-321 and 16-322 prevent Plaintiffs from placing their candidates on the ballot, thereby denying them any opportunity to build support for their party and advance their political agenda among the electorate.

58. Sections 16-321 and 16-322, as applied, violate Plaintiffs' right to form and build support for their political party, as guaranteed by the First and Fourteenth Amendments.

59. Such violations injure Plaintiffs.

## COUNT IV

### VIOLATION OF RIGHTS GUARANTEED BY FIRST AND FOURTEENTH AMENDMENTS

**(Request for Declaratory Judgment Holding Signature Requirements Imposed By A.R.S. §§ 16-321 and 16-322 Unconstitutional As Applied – Equal Protection)**

60. Plaintiffs reassert each preceding allegation as if set forth fully herein.

61. Sections 16-321 and 16-322, as amended, exponentially increase the signature requirements imposed on Plaintiffs, while generally imposing only slight increases, if any, on the major political parties' candidates.

62. Because the major parties have so many more members, their candidates can comply with those signature requirements easily, without relying on non-members for support.

63. Minor political parties that qualify for the ballot pursuant to Section 16-801 need not comply with the signature requirements imposed on Plaintiffs by Section 16-322(A), but rather comply with the much less onerous signature requirement imposed by Section 16-322(C).

64. The severe burdens that Sections 16-321 and 16-322 impose fall on Plaintiffs only, while the provisions continue to impose slight burdens on major party candidates.

65. Sections 16-321 and 16-322, as applied, violate Plaintiffs' right to equal protection of the law, as guaranteed by the Fourteenth Amendment.

66. Such violations injure Plaintiffs.

## PRAYER FOR RELIEF

67.     WHEREFORE, Plaintiffs respectfully request that the Court:

A.   Enter a declaratory judgment holding A.R.S. §§ 16-321 and 16-322 unconstitutional as applied to Plaintiffs;

B.   Enter an injunction permanently enjoining Secretary Reagan, her successors and agents from enforcing A.R.S. § 16-322;

C.   Award such other and further relief as the Court deems proper;

D.   Award attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988.


Respectfully submitted,


Oliver B. Hall
(Motion for Admission Pro Hac Vice Pending)
D.C. Bar No. 976463
CENTER FOR COMPETITIVE DEMOCRACY
1835 16th Street NW #5
Washington, D.C. 20009
(202) 248-9294
OLIVERHALL@COMPETITIVEDEMOCRACY.ORG

*Counsel for Plaintiffs*

**EXHIBIT A**

**Arizona HB 2608**

House Engrossed

State of Arizona

House of Representatives
Fifty-second Legislature
First Regular Session
2015

# Chapter 293

# HOUSE BILL 2608

Be it enacted by the Legislature of the State of Arizona:

Section 1. Title 16, chapter 1.1, article 1, Arizona Revised Statutes, is amended by adding section 16-193, to read:

16-193. Active registered voters; applicability

THE TERMS "REGISTERED VOTERS", "PERSONS WHO ARE REGISTERED TO VOTE", "REGISTERED ELECTORS" AND "VOTERS REGISTERED" AS USED IN THE FOLLOWING SECTIONS INCLUDE ONLY ACTIVE REGISTERED VOTERS FOR PURPOSES OF THE FOLLOWING:

1. CALCULATING PETITION SIGNATURE REQUIREMENTS PURSUANT TO SECTIONS 11-133, 16-322, 16-341, 45-415, 45-433, 48-4433 AND 48-4832.

2. MAILING AND DISTRIBUTING ELECTION-RELATED NOTICES, PAMPHLETS OR BALLOTS PURSUANT TO SECTIONS 11-137, 15-905.01, 16-245, 16-412, 16-461, 16-510, 19-123, 19-141, 35-454, 41-563.02, 42-6109.01, 42-17057, 42-17107, 48-620, 48-4021, 48-4236, 48-5314, 48-6432 AND 48-6433.

3. PROVIDING VOTING MACHINES PURSUANT TO SECTION 16-430.

4. FURNISHING BALLOTS PURSUANT TO SECTIONS 16-508 AND 48-685.

5. DETERMINING QUALIFICATION FOR POLITICAL PARTIES' CONTINUED REPRESENTATION ON THE BALLOT PURSUANT TO SECTIONS 16-244 AND 16-804.

6. CHOOSING POLITICAL PARTY OFFICERS PURSUANT TO SECTIONS 16-821 AND 16-823.

Sec. 2. Section 16-321, Arizona Revised Statutes, is amended to read:

16-321. Signing and certification of nomination petition; definition

A. Each signer of a nomination petition shall sign only one petition for the same office unless more than one candidate is to be elected to such office, and in that case not more than the number of nomination petitions equal to the number of candidates to be elected to the office. A signature shall not be counted on a nomination petition unless the signature is on a sheet bearing the form prescribed by section 16-314.

B. For the purposes of petitions filed pursuant to sections 16-312, 16-313, 16-314 and 16-341, each signer of a nomination petition shall be a voter who at the time of signing is a registered voter in the electoral district of the office the candidate is seeking.

C. If an elector signs more nomination petitions than permitted by subsection A of this section, the earlier signatures of the elector are deemed valid, as determined by the date of the signature as shown on the petitions. If the signatures by the elector are dated on the same day, all signatures by that elector on that day are deemed invalid. Any signature by that elector on a nomination petition on or after the date of the last otherwise valid signature is deemed invalid and shall not be counted.

D. The person before whom the signatures were written on the signature sheet is not required to be a resident of this state but otherwise shall be qualified to register to vote in this state pursuant to section 16-101 and, if not a resident of this state, shall register as a circulator with the secretary of state. A circulator shall verify that each of the names on the petition was signed in his presence on the date indicated, and that in his belief each signer was a qualified elector who resides at the address given as the signer's residence on the date indicated and, if for a partisan election, that each signer is a ~~member of the party from which the candidate is seeking nomination, or the signer is a member of a political party that is not entitled to continued representation on the ballot pursuant to section 16-804 or the signer is registered as independent or no party preferred~~ QUALIFIED SIGNER. The way the name appears on the petition shall be the name used in determining the validity of the name for any legal purpose pursuant to the election laws of this state. Signature and handwriting comparisons may be made.

E. A person who signs a nominating petition must use that person's actual residence address unless there is no actual residence address assigned by an official governmental entity or the person's actual residence is protected pursuant to section 16-153. The signature of a person who signs a nominating petition and who uses only a description of the place of residence or an Arizona post office box address is valid if the person is otherwise properly registered to vote, has not moved since registering to vote and is eligible to sign the nominating petition.

F. FOR THE PURPOSES OF THIS ARTICLE, "QUALIFIED SIGNER" MEANS ANY OF THE FOLLOWING:

1. A QUALIFIED ELECTOR WHO IS A REGISTERED MEMBER OF THE PARTY FROM WHICH THE CANDIDATE IS SEEKING NOMINATION.

2. A QUALIFIED ELECTOR WHO IS A REGISTERED MEMBER OF A POLITICAL PARTY THAT IS NOT ENTITLED TO CONTINUED REPRESENTATION ON THE BALLOT PURSUANT TO SECTION 16-804.

3. A QUALIFIED ELECTOR WHO IS REGISTERED AS INDEPENDENT OR NO PARTY PREFERRED.

Sec. 3. Section 16-322, Arizona Revised Statutes, is amended to read:

16-322. Number of signatures required on nomination petitions

A. Nomination petitions shall be signed BY A NUMBER OF QUALIFIED SIGNERS EQUAL TO:

1. If for a candidate for the office of United States senator or for a state office, excepting members of the legislature and superior court judges, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least ~~one-half of one per cent of the voter registration of the party of the candidate in at least three counties in the state, but not less than one-half~~ ONE-

FOURTH of one ~~per cent nor~~ PERCENT BUT NOT more than ten ~~per cent~~PERCENT of the total ~~voter registration of the candidate's party~~ NUMBER OF QUALIFIED SIGNERS in the state.

2. If for a candidate for the office of representative in Congress, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least ONE-HALF OF one ~~per cent~~ PERCENT but not more than ten ~~per cent~~ PERCENT of the total ~~voter registration of the party designated~~ NUMBER OF QUALIFIED SIGNERS in the district from which such representative shall be elected except that if for a candidate for a special election to fill a vacancy in the office of representative in congress, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least ~~one-half~~ ONE-FOURTH of one ~~per cent~~ PERCENT but not more than ten~~per cent~~ PERCENT of the total ~~voter registration of the party designated~~ NUMBER OF QUALIFIED SIGNERS in the district from which such representative shall be elected.

3. If for a candidate for the office of member of the legislature, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least ONE-HALF OF one ~~per cent~~ PERCENT but not more than three ~~per cent~~ PERCENT of the total ~~voter registration of the party designated~~ NUMBER OF QUALIFIED SIGNERSin the district from which the member of the legislature may be elected.

4. If for a candidate for a county office or superior court judge, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least ~~two per cent~~ ONE PERCENT but not more than ten ~~per cent~~ PERCENT of the total ~~voter registration of the party designated~~ NUMBER OF QUALIFIED SIGNERS in the county or district, ~~provided that in counties~~ EXCEPT THAT IF FOR A CANDIDATE FROM A COUNTY with a population of two hundred thousand persons or more, ~~a candidate for a county office shall have nomination petitions signed by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least ~~one-half~~ONE-FOURTH of one ~~per cent~~ PERCENT but not more than ten ~~per cent~~ PERCENT of the total ~~voter registration of the party designated~~ NUMBER OF QUALIFIED SIGNERS in the county or district.

5. If for a candidate for a community college district, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least:

~~(a) Through June 30, 2012, one-half of one per cent but not more than ten per cent of the total voter registration in the precinct as established pursuant to section 15-1441.~~

~~(b) Beginning July 1, 2012,~~ one-quarter of one ~~per cent~~ PERCENT but not more than ten ~~per cent~~ PERCENT of the total voter registration in the precinct as established pursuant to section 15-1441. Notwithstanding the total voter registration in the community college district, the maximum number of signatures required by this subdivision is one thousand.

6. If for a candidate for county precinct committeeman, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least two~~per cent~~ PERCENT but not more than ten ~~per~~

~~cent~~PERCENT of the party voter registration in the precinct or ten signatures, whichever is less.

7. If for a candidate for justice of the peace or constable, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least ~~two per cent~~ ONE PERCENT but not more than ten ~~per cent~~ PERCENT of the ~~party voter registration~~ NUMBER OF QUALIFIED SIGNERS in the precinct.

8. If for a candidate for mayor or other office nominated by a city at large, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least five ~~per cent~~ PERCENT and not more than ten ~~per cent~~ PERCENT of the designated party vote in the city, except that a city that chooses to hold nonpartisan elections may by ordinance provide that the minimum number of signatures required for the candidate be one thousand signatures or five ~~per cent~~ PERCENT of the vote in the city, whichever is less, but not more than ten ~~per cent~~ PERCENT of the vote in the city.

9. If for an office nominated by ward, precinct or other district of a city, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least five ~~per cent~~ PERCENT and not more than ten ~~per cent~~ PERCENT of the designated party vote in the ward, precinct or other district, except that a city that chooses to hold nonpartisan elections may provide by ordinance that the minimum number of signatures required for the candidate be two hundred fifty signatures or five ~~per cent~~ PERCENT of the vote in the district, whichever is less, but not more than ten ~~per cent~~ PERCENT of the vote in the district.

10. If for a candidate for an office nominated by a town at large, by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to at least five ~~per cent~~ PERCENT and not more than ten ~~per cent~~ PERCENT of the vote in the town, except that a town that chooses to hold nonpartisan elections may provide by ordinance that the minimum number of signatures required for the candidate be one thousand signatures or five ~~per cent~~ PERCENT of the vote in the town, whichever is less but not more than ten ~~per cent~~ PERCENT of the vote in the town.

11. If for a candidate for a governing board of a school district, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least one-half of one ~~per cent~~ PERCENT of the total voter registration in the school district if the governing board members are elected at large or one ~~per cent~~ PERCENT of the total voter registration in the single member district if governing board members or joint technical education district board members are elected from single member districts. Notwithstanding the total voter registration in the school district or single member district, the maximum number of signatures required by this paragraph is four hundred.

12. If for a candidate for a governing body of a special district as described in title 48, ~~by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to~~ at least one-half of one ~~per cent~~PERCENT of the vote in the special district but not more than two hundred fifty and not fewer than five signatures.

B. The basis of percentage in each instance referred to in subsection A of this section, except in cities, towns and school districts, shall be the number of ~~voters registered in the designated party of the candidate~~ QUALIFIED SIGNERS AS DETERMINED FROM THE VOTER REGISTRATION TOTALS as reported pursuant to section 16-168, subsection G on March 1 of the year in which the general election is held. In cities, the basis of percentage shall be the vote of the party for mayor at the last preceding election at which a mayor was elected. In towns, the basis of percentage shall be the highest vote cast for an elected official of the town at the last preceding election at which an official of the town was elected. In school districts, the basis of percentage shall be the total number of ACTIVE REGISTERED voters ~~registered~~ in the school district or single member district, whichever applies. The total number of ACTIVE REGISTERED voters ~~registered~~ for school districts shall be calculated using the periodic reports prepared by the county recorder pursuant to section 16-168, subsection G. The count that is reported on March 1 of the year in which the general election is held shall be the basis for the calculation of total voter registration for school districts.

C. In primary elections the signature requirement for party nominees, other than nominees of the parties entitled to continued representation pursuant to section 16-804, is at least one-tenth of one ~~per cent~~ PERCENT of the total vote for the winning candidate or candidates for governor or presidential electors at the last general election within the district. Signatures must be obtained from qualified electors who are qualified to vote for the candidate whose nomination petition they are signing.

D. If new boundaries for congressional districts, legislative districts, supervisorial districts, justice precincts or election precincts are established and effective subsequent to March 1 of the year of a general election and prior to the date for filing of nomination petitions, the basis for determining the required number of nomination petition signatures is the ~~number of registered voters in the designated party of the candidate~~ NUMBER OF QUALIFIED SIGNERS in the elective office, district or precinct on the day the new districts or precincts are effective.

APPROVED BY THE GOVERNOR APRIL 13, 2015.

FILED IN THE OFFICE OF THE SECRETARY OF STATE APRIL 14, 2015.

**EXHIBIT B**

Signature Requirements for Partisan Candidates Pursuant to A.R.S. § 16-322
(Available at http://www.azsos.gov/elections/running-office)

## Partisan Federal Candidates

## 2016 Signature Requirements for U.S. Representative in Congress

Signature requirements for U.S. Senator are the same as the requirements for statewide office

| Congressional District | Democrat Min | Democrat Max | Republican Min | Republican Max | Libertarian Min | Libertarian Max | Green Min | Green No Max |
|---|---|---|---|---|---|---|---|---|
| CD 1 | 1,323 | 26,458 | 1,196 | 23,914 | 636 | 12,702 | 92 | |
| CD 2 | 1,244 | 24,869 | 1,255 | 25,097 | 632 | 12,626 | 108 | |
| CD 3 | 1,154 | 23,072 | 861 | 17,214 | 573 | 11,441 | 60 | |
| CD 4 | 1,066 | 21,313 | 1,486 | 29,712 | 717 | 14,339 | 120 | |
| CD 5 | 1,160 | 23,195 | 1,638 | 32,746 | 749 | 14,969 | 115 | |
| CD 6 | 1,258 | 25,155 | 1,620 | 32,386 | 782 | 15,639 | 120 | |
| CD 7 | 1,034 | 20,679 | 708 | 14,156 | 527 | 10,531 | 51 | |
| CD 8 | 1,228 | 24,558 | 1,582 | 31,634 | 759 | 15,171 | 116 | |
| CD 9 | 1,217 | 24,337 | 1,236 | 24,709 | 675 | 13,498 | 80 | |

**How are these numbers calculated?**

The minimum number of signatures required is found by calculating 1/2 of 1% of the qualified signers in that district as of March 1, 2016. The maximum number of signatures required is found by calculating 10% of the total qualified signers in that district as of March 1, 2016 (A.R.S. § 16-322).

The Green Party is considered a new party in the state of Arizona through the 2018 election cycle. The minimum number of signatures required from a new party is calculated by totaling 1/10 of 1% of the total votes cast for the winning candidate for governor or president at the last general election within the district. (A.R.S. § 16-322).

## Partisan Statewide Candidates

## 2016 Statewide Signature Requirements

| Democrat | | Republican | | Libertarian | | Green | |
|------|------|------|------|------|------|------|--------|
| Min | Max | Min | Max | Min | Max | Min | No Max |
| 5,341 | 213,633 | 5,790 | 231,564 | 3,023 | 120,914 | 806 | |

**How are these numbers calculated?**

The minimum number of signatures required is found by calculating 1/4 of 1% of the total qualified signers in the state as of March 1, 2016. The maximum number of signatures required is found by calculating 10% of the total qualified signers in the state as of March 1, 2016. (A.R.S. § 16-322).

The Green Party is considered a new party in the state of Arizona through the 2018 election cycle. The minimum number of signatures required from a new party is calculated by totaling 1/10 of 1% of the total votes cast for the winning candidate for governor or president in the previous general election. (A.R.S. § 16-322).

## Partisan Legislative Candidates

## 2016 Partisan Signature Requirements

| | Democrat | | Republican | | Libertarian | | Green | |
|---|---|---|---|---|---|---|---|---|
| Legislative District | Min | Max | Min | Max | Min | Max | Min | No Max |
| LD 1 | 350 | 2,096 | 544 | 3,261 | 234 | 1,402 | 50 | |
| LD 2 | 340 | 2,039 | 270 | 1,616 | 165 | 990 | 22 | |
| LD 3 | 340 | 2,040 | 210 | 1,259 | 142 | 852 | 24 | |
| LD 4 | 309 | 1,854 | 252 | 1,507 | 164 | 982 | 14 | |
| LD 5 | 350 | 2,098 | 483 | 2,893 | 243 | 1,454 | 36 | |
| LD 6 | 353 | 2,115 | 410 | 2,456 | 198 | 1,186 | 36 | |
| LD 7 | 484 | 2,904 | 293 | 1,758 | 181 | 1,082 | 32 | |
| LD 8 | 287 | 1,720 | 274 | 1,642 | 156 | 933 | 19 | |
| LD 9 | 388 | 2,326 | 356 | 2,135 | 182 | 1,089 | 38 | |
| LD 10 | 383 | 2,296 | 361 | 2,165 | 183 | 1,096 | 34 | |
| LD 11 | 373 | 2,235 | 450 | 2,699 | 220 | 1,318 | 39 | |
| LD 12 | 351 | 2,105 | 532 | 3,190 | 231 | 1,384 | 37 | |
| LD 13 | 321 | 1,922 | 413 | 2,477 | 207 | 1,242 | 30 | |
| LD 14 | 356 | 2,135 | 433 | 2,593 | 202 | 1,208 | 38 | |
| LD 15 | 374 | 2,242 | 505 | 3,025 | 237 | 1,419 | 36 | |
| LD 16 | 356 | 2,132 | 462 | 2,771 | 240 | 1,438 | 31 | |
| LD 17 | 381 | 2,281 | 463 | 2,774 | 233 | 1,397 | 32 | |
| LD 18 | 414 | 2,481 | 458 | 2,746 | 229 | 1,373 | 53 | |
| LD 19 | 322 | 1,932 | 241 | 1,445 | 178 | 1,065 | 29 | |
| LD 20 | 368 | 2,208 | 418 | 2,508 | 218 | 1,306 | 44 | |
| LD 21 | 380 | 2,278 | 440 | 2,637 | 227 | 1,359 | 47 | |
| LD 22 | 386 | 2,311 | 553 | 3,316 | 246 | 1,471 | 68 | |
| LD 23 | 423 | 2,537 | 606 | 3,631 | 273 | 1,635 | 75 | |
| LD 24 | 358 | 2,145 | 282 | 1,690 | 182 | 1,090 | 40 | |
| LD 25 | 349 | 2,091 | 501 | 3,004 | 223 | 1,335 | 58 | |
| LD 26 | 313 | 1,876 | 275 | 1,645 | 180 | 1,076 | 31 | |
| LD 27 | 349 | 2,092 | 222 | 1,328 | 171 | 1,021 | 36 | |
| LD 28 | 381 | 2,282 | 447 | 2,677 | 210 | 1,258 | 52 | |

|  | Democrat | | Republican | | Libertarian | | Green |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **LD 29** | 284 | 1,700 | 220 | 1,320 | 156 | 934 | 26 |
| **LD 30** | 273 | 1,633 | 220 | 1,319 | 149 | 894 | 25 |

**How are these numbers calculated?**

The minimum number of signatures required is found by calculating 1/2 of 1% of the total qualified signers in the district as of March 1, 2016. The maximum number of signatures required is found by calculating 3% of the total qualified signers in the district as of March 1, 2016. (A.R.S. § 16-322).

The Green Party is considered a new party in the state of Arizona through the 2018 election cycle. The minimum number of signatures required from a new party is calculated by totaling 1/10 of 1% of the total votes cast for the winning candidate for governor or president at the last general election within the district. (A.R.S. § 16-322).

## EXHIBIT C

**Primary Election Ballot Access Signature Requirements for Partisan Candidates in
Maricopa County, Arizona Pursuant to A.R.S. § 16-322
(available at http://recorder.maricopa.gov/elections/signatures.aspx)**

# 2012 Signature Requirements
## Maricopa County
## Primary Election - August 28, 2012

| OFFICE / DISTRICT | DIST | REPUBLICAN | | | DEMOCRATIC | | | LIBERTARIAN | | | "16-341*" "INDEPENDENT" | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | VOTER REG TOTALS | MINIMUM REQUIRED | MAXIMUM REQUIRED | VOTER REG TOTALS | MINIMUM REQUIRED | MAXIMUM REQUIRED | VOTER REG TOTALS | MINIMUM REQUIRED | MAXIMUM REQUIRED | VOTER REG TOTALS *Name appears on the General Election Only | MINIMUM REQUIRED |
| COUNTY WIDE OFFICE | | 706,146 | 3,531 | 70,615 | 516,388 | 2,582 | 51,639 | 14,373 | 72 | 1,438 | 646,986 | 19,410 |
| BOARD OF SUPERVISORS | 1 | 159,449 | 798 | 15,945 | 111,043 | 556 | 11,105 | 3,420 | 18 | 342 | 150,130 | 4,504 |
| | 2 | 196,141 | 981 | 19,615 | 100,084 | 501 | 10,009 | 2,818 | 15 | 282 | 151,690 | 4,551 |
| | 3 | 140,053 | 701 | 14,006 | 97,322 | 487 | 9,733 | 2,930 | 15 | 293 | 114,041 | 3,422 |
| | 4 | 167,681 | 839 | 16,769 | 108,409 | 543 | 10,841 | 2,413 | 13 | 242 | 140,900 | 4,227 |
| | 5 | 42,822 | 215 | 4,283 | 99,530 | 498 | 9,953 | 2,792 | 14 | 280 | 90,225 | 2,707 |
| JUSTICE OF THE PEACE / CONSTABLE | DIST | | | | | | | | | | | |
| ARCADIA BILTMORE | 006 | 19,898 | 398 | 1,990 | 20,374 | 408 | 2,038 | 585 | 12 | 59 | 20,167 | 606 |
| COUNTRY MEADOWS (new dist) | 026 | 12,767 | 256 | 1,277 | 19,732 | 395 | 1,974 | 636 | 13 | 64 | 20,965 | 629 |
| DESERT RIDGE | 025 | 41,542 | 831 | 4,155 | 19,240 | 385 | 1,924 | 573 | 12 | 58 | 31,031 | 931 |
| DOWNTOWN* | 005 | 2,773 | 56 | 278 | 8,605 | 173 | 861 | 201 | 5 | 21 | 7,844 | 236 |
| DREAMY DRAW | 012 | 29,764 | 596 | 2,977 | 21,038 | 421 | 2,104 | 647 | 13 | 65 | 23,870 | 717 |
| HIGHLAND | 016 | 55,478 | 1,110 | 5,548 | 27,800 | 556 | 2,780 | 893 | 18 | 90 | 41,728 | 1,252 |
| MARYVALE | 009 | 4,520 | 91 | 452 | 12,050 | 241 | 1,205 | 545 | 11 | 55 | 11,026 | 331 |
| MOON VALLEY | 013 | 17,425 | 349 | 1,743 | 13,814 | 277 | 1,382 | 391 | 8 | 40 | 14,998 | 450 |
| NORTH MESA | 010 | 25,189 | 504 | 2,519 | 14,369 | 288 | 1,437 | 428 | 9 | 43 | 20,251 | 608 |
| SAN TAN | 024 | 44,117 | 883 | 4,412 | 21,255 | 426 | 2,126 | 604 | 13 | 61 | 36,054 | 1,082 |
| SOUTH MOUNTAIN** | 017 | 9,147 | 183 | 915 | 27,188 | 544 | 2,719 | 472 | 10 | 48 | 21,646 | 650 |

* Justice of the Peace ONLY - Term expires December 31, 2014

** Constable ONLY - Term expires December 31, 2014

3/1/2012

# 2014 Signature Requirements
## Maricopa County
## Primary Election - August 26, 2014

| OFFICE / DISTRICT | DIST | REPUBLICAN VOTER REG TOTALS | MINIMUM REQUIRED | MAXIMUM ALLOWED | DEMOCRATIC VOTER REG TOTALS | MINIMUM REQUIRED | MAXIMUM ALLOWED | LIBERTARIAN VOTER REG TOTALS | MINIMUM REQUIRED | MAXIMUM ALLOWED | 16-341* "INDEPENDENT" VOTER REG TOTALS | MINIMUM REQUIRED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNTY WIDE OFFICE | | 710,487 | 3,553 | 71,049 | 533,849 | 2,670 | 53,385 | 17,325 | 87 | 1,733 | 716,438 | 21,494 |
| BOARD OF SUPERVISORS SUPERVISORIAL DIST 4 (2 YR TERM) | | 193,181 | 966 | 19,319 | 108,729 | 544 | 10,873 | 2,958 | 15 | 296 | 153,357 | 4,601 |
| JUSTICE OF THE PEACE CONSTABLE | | | | | | | | | | | | |
| AGUA FRIA | 20 | 5,346 | 107 | 535 | 13,987 | 280 | 1,399 | 313 | 7 | 32 | 14,516 | 436 |
| ARROWHEAD | 14 | 54,519 | 1,091 | 5,452 | 28,596 | 572 | 2,860 | 758 | 16 | 76 | 39,148 | 1,175 |
| DOWNTOWN | 5 | 2,968 | 60 | 297 | 10,122 | 203 | 1,013 | 275 | 6 | 28 | 9,645 | 290 |
| EAST MESA | 4 | 42,474 | 850 | 4,248 | 20,693 | 414 | 2,070 | 795 | 16 | 80 | 33,335 | 1,001 |
| ENCANTO | 2 | 9,768 | 196 | 977 | 16,376 | 328 | 1,638 | 490 | 10 | 49 | 13,835 | 416 |
| HASSAYAMPA | 23 | 46,306 | 927 | 4,631 | 27,513 | 551 | 2,752 | 637 | 13 | 64 | 43,472 | 1,305 |
| IRONWOOD | 7 | 1,862 | 38 | 187 | 1,364 | 28 | 137 | 48 | 1 | 5 | 1,953 | 59 |
| KYRENE | 19 | 28,561 | 572 | 2,857 | 27,317 | 547 | 2,732 | 917 | 19 | 92 | 32,898 | 987 |
| MANISTEE | 8 | 23,913 | 479 | 2,392 | 27,969 | 560 | 2,797 | 835 | 17 | 84 | 31,823 | 955 |
| MCDOWELL MOUNTAIN | 15 | 77,509 | 1,551 | 7,751 | 37,344 | 747 | 3,735 | 1,197 | 24 | 120 | 59,039 | 1,772 |
| NORTH VALLEY | 11 | 46,483 | 930 | 4,649 | 15,218 | 305 | 1,522 | 975 | 20 | 98 | 39,308 | 1,180 |
| SAN MARCOS | 3 | 49,110 | 983 | 4,911 | 34,413 | 689 | 3,442 | 1,154 | 24 | 116 | 50,530 | 1,516 |
| SOUTH MOUNTAIN | 17 | 9,596 | 192 | 960 | 31,185 | 624 | 3,119 | 562 | 12 | 57 | 26,413 | 793 |
| UNIVERSITY LAKES | 18 | 13,999 | 280 | 1,400 | 14,294 | 286 | 1,430 | 630 | 13 | 63 | 18,023 | 541 |
| WEST MCDOWELL | 22 | 3,270 | 66 | 327 | 10,013 | 201 | 1,002 | 288 | 6 | 29 | 9,730 | 292 |
| WEST MESA | 21 | 6,837 | 137 | 684 | 7,740 | 155 | 774 | 322 | 7 | 33 | 11,301 | 340 |
| WHITE TANK | 1 | 32,251 | 646 | 3,226 | 21,958 | 440 | 2,196 | 649 | 13 | 65 | 32,914 | 988 |

*Name appears on the General Election Only

# 2016 Signature Requirements
## Maricopa County
## Primary Election - August 30, 2016

03/01/2016

| OFFICE / DISTRICT | | REPUBLICAN | | | DEMOCRATIC | | | LIBERTARIAN | | | 16-341* "INDEPENDENT" *Name appears on the General Election Only | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | QUALIFIED SIGNERS | MINIMUM REQUIRED | MAXIMUM ALLOWED | QUALIFIED SIGNERS | MINIMUM REQUIRED | MAXIMUM ALLOWED | QUALIFIED SIGNERS | MINIMUM REQUIRED | MAXIMUM ALLOWED | QUALIFIED SIGNERS | MINIMUM REQUIRED |
| **COUNTY WIDE OFFICE** | | 1,444,627 | 3,612 | 144,463 | 1,268,632 | 3,172 | 126,864 | 752,312 | 1,881 | 75,232 | 735,686 | 22,071 |
| **BOARD OF SUPERVISORS** | DIST | | | | | | | | | | | |
| | 1 | 306,386 | 766 | 30,639 | 261,713 | 655 | 26,172 | 155,526 | 389 | 15,553 | 151,756 | 4,553 |
| | 2 | 354,631 | 887 | 35,464 | 257,426 | 644 | 25,743 | 165,252 | 414 | 16,526 | 161,750 | 4,853 |
| | 3 | 284,352 | 711 | 28,436 | 246,484 | 617 | 24,649 | 143,950 | 360 | 14,395 | 140,271 | 4,209 |
| | 4 | 335,924 | 840 | 33,593 | 270,705 | 677 | 27,071 | 166,021 | 416 | 16,603 | 140,964 | 4,289 |
| | 5 | 163,334 | 409 | 16,334 | 232,304 | 581 | 23,231 | 121,563 | 304 | 12,157 | 118,945 | 3,569 |
| **JUSTICE OF THE PEACE CONSTABLE** | DIST | | | | | | | | | | | |
| ARCADIA BILTMORE | 06 | 44,540 | 446 | 4,454 | 46,892 | 469 | 4,690 | 25,047 | 251 | 2,505 | 24,345 | 731 |
| COUNTRY MEADOWS | 26 | 40,307 | 404 | 4,031 | 49,979 | 500 | 4,998 | 28,260 | 283 | 2,826 | 27,662 | 830 |
| DESERT RIDGE | 25 | 81,204 | 813 | 8,121 | 57,359 | 574 | 5,736 | 37,840 | 379 | 3,784 | 37,026 | 1,111 |
| DREAMY DRAW | 12 | 59,301 | 594 | 5,931 | 51,806 | 519 | 5,181 | 29,805 | 299 | 2,981 | 29,016 | 871 |
| HIGHLAND | 16 | 95,662 | 957 | 9,567 | 68,915 | 690 | 6,892 | 43,578 | 436 | 4,358 | 42,502 | 1,276 |
| MARYVALE | 09 | 18,809 | 189 | 1,881 | 27,554 | 276 | 2,756 | 14,642 | 147 | 1,465 | 14,253 | 428 |
| MCDOWELL MOUNTAIN** | 15 | 136,040 | 1,361 | 13,604 | 96,215 | 963 | 9,622 | 60,296 | 603 | 6,030 | 59,097 | 1,773 |
| MOON VALLEY | 13 | 37,429 | 375 | 3,743 | 34,844 | 349 | 3,485 | 20,156 | 202 | 2,016 | 19,663 | 590 |
| NORTH MESA | 10 | 46,675 | 467 | 4,668 | 36,512 | 366 | 3,652 | 23,057 | 231 | 2,306 | 22,482 | 675 |
| NORTH VALLEY** | 11 | 87,481 | 875 | 8,749 | 65,843 | 659 | 6,585 | 41,631 | 417 | 4,164 | 40,645 | 1,220 |
| SAN TAN | 24 | 88,721 | 888 | 8,873 | 62,138 | 622 | 6,214 | 41,598 | 416 | 4,160 | 40,752 | 1,223 |

**Constable Only - Term expires Dec. 31, 2018

**EXHIBIT D**

First Declaration of Kim Allen; First Declaration of Ricky T. Fowlkes; First Declaration of
Ernest Hancock; First Declaration of Jack Heald; First Declaration of Michael Kielsky;
First Declaration of Christopher Rike; First Declaration of David Schlosser; First
Declaration of Michael Shoen

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| THE ARIZONA LIBERTARIAN PARTY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>MICHELE REAGAN,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. _____<br>)<br>)<br>)<br>)<br>) |

<u>**FIRST DECLARATION OF KIM ALLEN**</u>
**(pursuant to 28 U.S.C. § 1746)**

I, Kim Allen, hereby declare as follows:

1.      I reside in Pinal County, Arizona. I am over the age of 18 and competent to state the following.

2.      In 2012, I attempted to run for Arizona State Senate in Legislative District ("LD") 11 as the nominee of the Arizona Libertarian Party ("AZLP"). To appear on AZLP's primary ballot, I was required to submit nomination petitions with 25 valid signatures. I submitted a total of 32 signatures, but was unaware of the restrictions upon which registered voters may sign such petitions. As a result, my nomination petitions were rejected following a challenge by a voter affiliated with the Republican Party of Arizona.

3.      In 2012, I ran instead for the U.S. House of Representatives in Congressional District ("CD") 1, as a write-in candidate in AZLP's primary. Under Arizona law, I needed about 60 write-in votes to appear on the general election ballot. I received approximately 1,000 write-in votes and appeared on the general election ballot as AZLP's nominee. I ultimately received

First Declaration of Kim Allen

approximately 15,500 votes, or about 7 percent of the total votes cast for that office.

    4.      Following the 2012 election, I received several emails from Republicans, and read several online comments or posts, which claimed that I was the reason the Republican candidate lost the race for U.S. House in CD 1. At this time, it was widely reputed in political circles that Republicans would attempt to change Arizona's ballot access laws in order to exclude Libertarians from participating in future elections.

    5.      Under Arizona law as amended in 2015, the signature requirements that Libertarian candidates for U.S. House must meet to appear on AZLP's primary election ballot now range from a low of 573 in CD 3 to a high of 782 in CD 6. A write-in candidate in the primary needs the same number of votes to advance to the general election.

    6.      Arizona's Congressional Districts have been redrawn since 2012, and the old CD 1 no longer exists, but the exponential increases in signature requirements for all Libertarian candidates will make it practically impossible for us to appear on the ballot in 2016 and subsequent election cycles. As I know from firsthand experience, it's necessary to obtain approximately 50 percent more signatures than the requirement just to survive any challenge that may be filed. Furthermore, the population in many districts is quite sparse. As a result, I cannot walk out my door and collect anywhere close to 500 or 600 signatures.

    7.      In addition, as a Libertarian seeking to appear on AZLP's primary election ballot, I want my nomination petitions to be signed by Libertarian voters – not independents or voters affiliated with other parties. Libertarian voters are so widely dispersed, however, that I would need to rely on independent voters as a practical necessity. The only alternative would be

2

**First Declaration of Kim Allen**

countless hours of driving to find Libertarian voters who may be unavailable, necessitating a

return trip to their homes just to obtain a single signature. But relying on independent voters

presents an additional burden, since they do not belong to our party and may not share our

political philosophy or policy goals. As a result, they are often unwilling to sign our nomination

petitions.

8.      I want to run for public office in the future as a Libertarian candidate, but the new

signature requirements enacted in 2015 are nearly certain to prevent me from appearing on

AZLP's primary election ballot – even if I were willing and able to seek support from

independent voters in order to do so.

9.      I currently reside in CD 1 and LD 11. To appear on AZLP's primary election

ballot as a candidate for Arizona State House in LD 11, I am required to submit 220 valid

signatures. LD 11 has 842 registered Libertarian voters. That means I cannot comply with the

signature requirement, without relying on independent voters, unless I obtain signatures from

26.12 percent of registered Libertarian voters in LD 11.

10.     To appear on AZLP's primary election ballot as a candidate for U.S. House in CD

1, I am required to submit 636 valid signatures. CD 1 has 2,469 registered Libertarian voters.

That means I cannot comply with the signature requirement, without relying on independent

voters, unless I obtain signatures from 25.75 percent of registered Libertarian voters in CD 1.

11.     The statements and matters alleged herein are within my personal knowledge, and

true and correct to the best of my knowledge and belief.

3

**First Declaration of Kim Allen**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: _4 - 5 - 16_                    _[signature]_
                                       Kim Allen

4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| THE ARIZONA LIBERTARIAN PARTY, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. _____ |
| MICHELE REAGAN, | ) ) | |
| Defendant. | ) ) ) | |

## FIRST DECLARATION OF RICKY T. FOWLKES
### (pursuant to 28 U.S.C. § 1746)

I, Ricky T. Fowlkes, hereby declare as follows:

1.      I reside in Maricopa County, Arizona. I am over the age of 18 and competent to state the following.

2.      I ran for Arizona Corporation Commission as the nominee of the Arizona Libertarian Party ("AZLP") in 1988, 2004, 2006 and 2010. In each of these elections, I was required to submit approximately 130 signatures to appear on AZLP's primary election ballot. I did so twice, and in the other two elections, I ran as a write-in candidate. In all four election cycles, I appeared on the general election ballot as the nominee of AZLP.

3.      To run for Arizona Corporation Commission under the new signature requirements enacted in 2015, I now must submit 3,023 signatures to appear on AZLP's primary election ballot. That figure amounts to 11.9 percent of all Arizona voters registered as Libertarians.

4.      I want to run as the AZLP candidate for Arizona Corporation Commission in

First Declaration of Ricky T. Fowlkes

future elections, including the 2016 election cycle, but almost certainly cannot comply with the new signature requirements enacted in 2015. To have any hope of doing so, I would need to collect signatures from independent voters, as well as Libertarians.

5.     As a Libertarian seeking the nomination of AZLP in a partisan primary election, I object to election laws that compel me to seek support from voters who do not even belong to our party. Independent voters do not necessarily subscribe to the Libertarian philosophy, nor do they share our goal of building AZLP as an alternative to the two major parties. There is no reason they should have any influence over which candidates appear on AZLP's primary election ballot, or which candidates AZLP eventually chooses as our nominees.

6.     The statements and matters alleged herein are within my personal knowledge, and true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  4.4.16                              Ricky J. Fowlkes
                                           Ricky T. Fowlkes

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

THE ARIZONA LIBERTARIAN
PARTY, et al.

        Plaintiffs,

        v.

MICHELE REAGAN,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

## FIRST DECLARATION OF ERNEST HANCOCK
### (pursuant to 28 U.S.C. § 1746)

I, Ernest Hancock, hereby declare as follows:

    1.    I reside in Maricopa County, Arizona. I am over the age of 18 and competent to state the following.

    2.    I have run for public office as the nominee of the Arizona Libertarian Party ("AZLP") in several elections. In 1994, I ran for Secretary of State. In 1996, 1998 and 2000, I ran for the U.S. House of Representatives. In 2004, I ran for the U.S. Senate. In 2006, I ran again for Secretary of State. And in 2008, I ran for Maricopa County Recorder.

    3.    In each of the foregoing elections, I met the requirements under Arizona law to appear on the general election ballot as the nominee of AZLP.

    4.    I want to run for public office as AZLP's nominee in future elections, including the 2016 election cycle, but almost certainly cannot comply with the new signature requirements enacted in 2015. To have any hope of doing so, I would need to collect signatures from independent voters, as well as Libertarians.

First Declaration of Ernest Hancock

     5.    As a Libertarian seeking the nomination of AZLP in a partisan primary election, I object to election laws that compel me to seek support from voters who do not even belong to our party. Independent voters do not necessarily subscribe to the Libertarian philosophy, nor do they share our goal of building AZLP as an alternative to the two major parties. There is no reason they should have any influence over which candidates appear on AZLP's primary election ballot, or which candidates AZLP eventually chooses as our nominees.

     6.    The statements and matters alleged herein are within my personal knowledge, and true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: _2016-04-05_

Ernest Hancock

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE ARIZONA LIBERTARIAN PARTY, et al. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. _____ ) |
| MICHELE REAGAN, | ) ) |
| Defendant. | ) ) ) |

## FIRST DECLARATION OF JACK HEALD
### (pursuant to 28 U.S.C. § 1746)

I, Jack Heald, hereby declare as follows:

1.      I reside in Maricopa County, Arizona. I am over the age of 18 and competent to state the following.

2.      In 2006, I ran for state representative as the nominee of the Arizona Libertarian Party ("AZLP") in Legislative District ("LD") 20. I complied with the requirements under Arizona law to appear on the general election ballot as the nominee of AZLP in that election cycle. I received 12,857 votes in the general election, or 18.5 percent of the total votes cast.

3.      I currently reside in LD 18 and Congressional District ("CD") 9. I want to run for public office as AZLP's nominee in future elections, including the 2016 election cycle, but almost certainly cannot comply with the new signature requirements enacted in 2015. To have any hope of doing so, I would need to collect signatures from independent voters, as well as Libertarians.

4.      To appear on AZLP's primary election ballot as a candidate for Arizona State

First Declaration of Jack Heald

House in LD 18, I am required to submit 356 valid signatures. LD 18 has 1,166 registered Libertarian voters. That means I cannot comply with the signature requirement, without relying on independent voters, unless I obtain signatures from 30.53 percent of registered Libertarian voters in LD 18.

5.     To appear on AZLP's primary election ballot as a candidate for U.S. House in CD 9, I am required to submit 675 valid signatures. CD 9 has 3,661 registered Libertarian voters. That means I cannot comply with the signature requirement, without relying on independent voters, unless I obtain signatures from 18.43 percent of registered Libertarian voters in CD 9.

6.     Obtaining 356 valid signatures in LD 18, or 675 valid signatures in CD 9, from registered Libertarians only, is an onerous burden. To prevail against a challenge, one must submit roughly 50 percent more signatures than the required number, because many signatures are rejected on a variety of technical or other grounds. Further, even in a relatively populated area like Maricopa County, the only reliable way to track down particular voters is by visiting their homes, often more than once. This requires a great deal of time – far more than it would take to collect the same number of signatures in front of a grocery store, post office, library or other common petitioning locations.

7.     As a Libertarian seeking the nomination of AZLP in a partisan primary election, I object to election laws that compel me to seek support from voters who do not even belong to our party. Independent voters do not necessarily subscribe to the Libertarian philosophy, nor do they share our goal of building AZLP as an alternative to the two major parties. There is no reason they should have any influence over which candidates appear on AZLP's primary election

**First Declaration of Jack Heald**

ballot, or which candidates AZLP eventually chooses as our nominees.

      8.     The statements and matters alleged herein are within my personal knowledge, and

true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.

Date: _____April 6, 2016_____         _Jack Heald_____

                                    Jack Heald

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE ARIZONA LIBERTARIAN PARTY, et al. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. _____ ) |
| MICHELE REAGAN, | ) ) |
| Defendant. | ) ) ) |

### FIRST DECLARATION OF MICHAEL KIELSKY
**(pursuant to 28 U.S.C. § 1746)**

I, Michael Kielsky, hereby declare as follows:

1.    I am 51, and competent to state the following.

2.    I currently serve as Chair of the Arizona Libertarian Party ("AZLP"). In that capacity, it is my responsibility to build support for our party, and for the Libertarian platform, among the electorate. Recruiting candidates to run as Libertarians and ensuring that they appear on the ballot are the primary means by which AZLP achieves this objective.

3.    AZLP is a relatively new political party. At present, only 25,807 Arizona voters are registered as Libertarians. By contrast, the two older parties – the Republicans and Democrats – have more than 2 million registered members between them. Consequently, at this stage of our development, AZLP campaigns, hopes, but does not necessarily expect, that our candidates will win elections. We do, however, seek to shape public debate and influence public policy through our participation in elections, by advocating for Libertarian principles, building support among the electorate for our philosophy, views, and policies, and influencing the positions taken by other

**First Declaration of Michael Kielsky**

candidates in the race.

    4.    In order to accomplish our goals as a party, it is essential that AZLP retain autonomy over the process by which we nominate our candidates. To the extent that we lose control over this process, we lose control over our primary means of promoting Libertarian principles among the electorate.

    5.    The increased signature requirements imposed by A.R.S. §§ 16-321 and 16-322, as amended in 2015, are so high that they effectively compel Libertarian candidates to obtain signatures from independent voters. As a result, independent voters now play a substantial, and in many cases predominant, role in determining which candidates will be select as the AZLP's partisan nominees. As Libertarians, we object to this compelled association on principle, as it is contrary to our core belief in lesser government and greater individual liberty.

    6.    AZLP's compelled association with independent voters under Sections 16-321 and 16-322 is doubly onerous because independent voters have no allegiance to our party, no reason to adhere to, much less promote, the Libertarian platform, and no vested interest in ensuring AZLP's continued success. Being forced to rely on such voters, for the purpose of selecting our own partisan nominees, thus diminishes our ability to promote the Libertarian platform effectively and build support for AZLP in the long term.

    7.    For the same reasons, collecting signatures from independent voters to place our candidates on the primary election ballot is especially difficult. Independent voters, by definition, are voters who have chosen not to join a political party. Such voters have little incentive to support candidates who seek to participate in a partisan primary.

**First Declaration of Michael Kielsky**

8.      In addition to serving as Chair of AZLP, I have run as a Libertarian candidate in several elections.

9.      In 2002, I was the Libertarian candidate for Justice of the Peace, West Mesa Precinct, Maricopa County, Arizona. Upon information and belief, I needed to obtain around 23 nominating petition signatures to be listed as a candidate in the Libertarian primary, and obtained sufficient signatures to be listed, and subsequently became the Libertarian nominee for that office. I received 2,975 votes (29.10%) in the general election.

10.     In 2004, I was the Libertarian candidate for US Congress, CD 5, Arizona. I needed to obtain around 14 nominating petition signatures to be listed as a candidate in the Libertarian primary, and obtained 44 signatures, and subsequently became the Libertarian nominee for that office. I received 6,189 votes (2.31%) in the general election.

11.     In 2008, I was the Libertarian candidate for Maricopa County Attorney, Arizona. I needed to obtain 46 nominating petition signatures to be listed as a candidate in the Libertarian primary, and obtained 103 signatures, and subsequently became the Libertarian nominee for that office. I received 54,139 votes (4.34%) in the general election.

12.     In 2010, I was the Libertarian candidate for Maricopa County Attorney, Arizona. I needed to obtain 80 nominating petition signatures to be listed as a candidate in the Libertarian primary, and obtained 115 signatures, and subsequently became the Libertarian nominee for that office. I received 214,754 votes (25.85%) in the general election.

13.     In 2012, I was the Libertarian candidate for Maricopa County Attorney, Arizona. I needed to obtain 72 nominating petition signatures to be listed as a candidate in the Libertarian

3

First Declaration of Michael Kielsky

primary, and obtained 155 signatures, and subsequently became the Libertarian nominee for that office. I received 288,281 votes (27.55%) in the general election.

14.     In 2014, I was the Libertarian candidate for State Representative, LD 25. I needed to obtain 11 nominating petition signatures to be listed as a candidate in the Libertarian primary, and obtained 21 signatures, and subsequently became the Libertarian nominee for that office. I received 3,661 votes (3.61%) in the general election.

15.     As a ballot-listed candidate, my participation in these elections, in the interviews, debates, surveys, campaign events, and candidate panels was as much a goal as was the general election itself, as each created opportunities to discuss issues and Libertarian policy proposals to address the issues of the day.

16.     I have filed the preliminary papers to be a candidate for Maricopa County Attorney, Arizona, for 2016. Under the prior law, I would have needed to obtain about 88 nominating petition signatures to be listed as a candidate in the Libertarian primary. Under the current law, as amended in 2015, I now need to obtain about 1,881 valid nominating petition signatures. In order to assure I obtain the minimum number of valid signatures that could withstand an election challenge, I estimate that I need to collect almost 3,000 nominating petition signatures, before June 1, 2016.

17.     There are currently 16,817 registered Libertarian voters in Maricopa County, based on voter data released by the Secretary of State in January 2016. To collect the 1,881 valid signatures required by law from registered Libertarian voters only, I must obtain the signatures of 11.18 percent of the total number of registered Libertarians in Maricopa County.

**First Declaration of Michael Kielsky**

18.     I object to seeking support from voters who are not registered Libertarians for purposes of obtaining ballot access as a Libertarian candidate, although I am doing so because it is the only way I may have any chance of complying with the new signature requirements imposed by Sections 16-321 and 16-322.

19.     Despite diligent efforts starting in October 2015, I have only managed to obtain about 12% of the signatures I will need. At this pace, I will fall significantly short of the goal, despite having already expended far more time and effort than in any prior candidacy. Thus, even though I was on the general election ballot in 2002, 2004, 2008, 2010, 2012 and 2014, and received more than 25 percent of the vote in half the races in which I ran, it is unlikely that I will even appear on the ballot in 2016.

20.     The statements and matters alleged herein are within my personal knowledge, and true and correct to the best of my knowledge and belief, except as to those allegations stated upon information and belief, and, as to those allegations, I believe them to be true.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  03-27-2016            _____
                                        Michael Kielsky

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| THE ARIZONA LIBERTARIAN PARTY, et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| MICHELE REAGAN, | ) ) | |
| Defendant. | ) ) ) | |

### FIRST DECLARATION OF CHRISTOPHER RIKE
#### (pursuant to 28 U.S.C. § 1746)

I, Christopher Rike, hereby declare as follows:

1.     I reside in Yavapai County, Arizona. I am over the age of 18 and competent to state the following.

2.     In 2010, I ran for Clerk of County in Maricopa County as the nominee of the Arizona Libertarian Party ("AZLP"). To appear on AZLP's primary ballot, I was required to submit nomination petitions with 80 valid signatures. I submitted 112 signatures, and appeared on the general election ballot. I received 48,541 votes in the general election, or 5.43 percent of the total votes cast.

3.     In 2014, I ran for the U.S. House of Representatives in Congressional District ("CD") 4 as AZLP's nominee. I ran in AZLP's primary election as a write-in candidate, and needed to receive 25 write-in votes to appear on the general election ballot. I received at least that many write-in votes, and appeared on the general election ballot. I received 2,531 votes in the general election, or 4.05 percent of the total votes cast.

**First Declaration of Christopher Rike**

4.      I want to run for public office in the future as a Libertarian candidate, but the new signature requirements enacted in 2015 are nearly certain to prevent me from appearing on AZLP's primary election ballot – even if I were willing and able to seek support from independent voters in order to do so.

5.      In order to appear on AZLP's primary election ballot as a candidate for countywide office in Yavapai County in 2016, I must submit nomination petitions with 115 valid signatures. There are 959 registered Libertarian voters in Yavapai County. That means I cannot comply with the signature requirement, without relying on independent voters, unless I obtain signatures from 11.99 percent of registered Libertarian voters in Yavapai County.

6.      I currently reside in CD 4. To appear on AZLP's primary election ballot as a candidate for U.S. House in CD 4 in 2016, I must submit nomination petitions with 717 valid signatures. There are 2,551 registered Libertarian voters in CD 4. That means I cannot comply with the signature requirement, without relying on independent voters, unless I obtain signatures from 28.10 percent of registered Libertarian voters in CD 4.

7.      As a Libertarian seeking to appear on AZLP's primary election ballot, I want my nomination petitions to be signed by Libertarian voters – not independents or voters affiliated with other parties. Libertarian voters are so widely dispersed, however, that I would need to rely on independent voters as a practical necessity. The only alternative would be countless hours of driving to find Libertarian voters who may be unavailable, necessitating a return trip to their homes just to obtain a single signature. But relying on independent voters presents an additional burden, since they do not belong to our party and may not share our political philosophy or

**First Declaration of Christopher Rike**

policy goals. As a result, they are often unwilling to sign our nomination petitions.

8.      The statements and matters alleged herein are within my personal knowledge, and true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: ___4-4-16___                          
Christopher Rike

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE ARIZONA LIBERTARIAN PARTY, et al. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. _____ ) |
| MICHELE REAGAN, | ) ) |
| Defendant. | ) ) ) |

### FIRST DECLARATION OF DAVID SCHLOSSER
#### (pursuant to 28 U.S.C. § 1746)

I, David Schlosser, hereby declare as follows:

1.      I reside in St. Louis County, Missouri, but formerly resided in Coconino County, Arizona. I am over the age of 18 and competent to state the following.

2.      In 2006, I ran for U.S. House of Representatives in Congressional District ("CD") 1 as the nominee of the Arizona Libertarian Party ("AZLP"). To appear on AZLP's primary ballot, I was required to submit nomination petitions with 8 valid signatures. I submitted between 12 and 15 signatures, relying entirely on registered Libertarian voters – not independents – and appeared on the general election ballot. I received approximately 5 percent of the vote in the general election.

3.      To appear on AZLP's primary election ballot as a candidate for U.S. House in CD 1 in 2016, I would be required to submit nomination petitions with 636 valid signatures. There are 2,469 registered Libertarian voters in CD 1. That means I could not comply with the signature requirement without relying on independent voters, as I previously did, unless I

First Declaration of David Schlosser

obtained signatures from 25.75 percent of registered Libertarian voters in CD 1.

4.     Coconino County, where CD 1 is located, is a rural area with a widely dispersed population. During my 2006 campaign, I drove up to 8 hours to attend debates and candidate forums, sometimes held in towns with just a few thousand residents. In such a district, there's no population center where it's possible to obtain hundreds of signatures from Libertarian voters by traditional means of petitioning, such as spending the day in front of a post office, grocery store or other public spaces. The new signature requirements enacted in 2015 thus make collecting signatures from independent voters a practical necessity for Libertarians.

5.     As a Libertarian seeking to appear on AZLP's primary election ballot, I wanted my nomination petitions to be signed by Libertarian voters – not independents or voters affiliated with other parties. Further, relying on independent voters presents an additional burden, since they do not belong to our party and may not share our political philosophy or policy goals. As a result, they are often unwilling to sign our nomination petitions.

6.     The statements and matters alleged herein are within my personal knowledge, and true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: _____     _____
                                                    David Schlosser

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE ARIZONA LIBERTARIAN PARTY, et al. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )     Civil Action No. _____ ) |
| MICHELE REAGAN, | ) ) |
| Defendant. | ) ) |

### FIRST DECLARATION OF MICHAEL SHOEN
#### (pursuant to 28 U.S.C. § 1746)

I, Michael Shoen, hereby declare as follows:

    1.    I reside in Maricopa County, Arizona. I am over the age of 18 and competent to state the following.

    2.    In 2008 and 2010, I ran for U.S. House of Representatives in Congressional District ("CD") 9 as the nominee of the Arizona Libertarian Party ("AZLP"). To appear on AZLP's primary ballot in each election, I was required to submit nomination petitions with approximately 35 valid signatures. I did so and appeared on the general election ballot in 2008 and in 2010. I received approximately 4.5 percent of the vote in the general election in 2008, and approximately 5 percent of the vote in the general election in 2010.

    3.    I would like to run in future elections as the nominee of AZLP but will be unable to do so because of the huge increases in signature requirements enacted in 2015. This is exactly what the law was intended to accomplish. During the 2010 congressional election in CD 9, my Republican opponent and his wife both approached me because they were worried that the race

**First Declaration of Michael Shoen**

was close and he would lose. They suggested that we should be "allied" against the Democratic

candidate. Then, following one of our debates, the Republican candidate's mother-in-law called

me and expressly requested that I give him my support and any votes I control, or words to that

effect. I responded that I was a candidate in the race and would not support my Republican

opponent, and that I did not "control" any votes anyway. The Republican candidate went on to

win the election, but this episode made clear to me the extent to which some Arizona

Republicans wish to prevent Libertarian candidates from obtaining ballot access in future

elections.

    4.     I currently reside in CD 6. To appear on AZLP's primary election ballot as a

candidate for U.S. House in CD 6 in 2016, I must submit nomination petitions with 782 valid

signatures. There are 3,508 registered Libertarian voters in CD 6. That means I could not comply

with the signature requirement without relying on independent voters, as I previously did, unless

I obtained signatures from 22.29 percent of registered Libertarian voters in CD 6.

    5.     Obtaining 782 signatures for a Libertarian candidate in CD 6 is a practically

insurmountable burden. I typically collect my own signatures by walking door to door in

residential neighborhoods. This is a time consuming and laborious process. I averaged about 8

signatures in 4 hours at my best – or one signature every half hour. That's because many people

are not home when you visit, or they won't answer their door if they are home, and if they do,

many independent voters simply are not interested or willing to help a Libertarian candidate gain

access to AZLP's partisan primary ballot. As a result, based on my past experience, I estimate

that it would take me around 350 or 360 hours of petitioning to collect the required number of

**First Declaration of Michael Shoen**

signatures — and much longer than that to collect the 1,200 or so signatures I would need to survive a challenge.

     6.    The statements and matters alleged herein are within my personal knowledge, and true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 4-17-2016      _Michael L Shoen_
                         Michael Shoen

**EXHIBIT E**

**First Declaration of Angel Torres**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE ARIZONA LIBERTARIAN PARTY, et al. )<br><br>Plaintiffs, )<br><br>v. )<br><br>MICHELE REAGAN, )<br><br>Defendant. ) | Civil Action No. _____ |

FIRST DECLARATION OF ANGEL TORRES
(pursuant to 28 U.S.C. § 1746)

I, Angel Torres, hereby declare as follows:

1.      I reside in Maricopa County, Arizona. I am over the age of 18 and competent to state the following.

2.      I am Chair of the Arizona Green Party ("AZGP"). AZGP was founded in 1990, and has achieved ballot status five times since then, in 1992, 2000, 2008, 2010 and 2012. AZGP will also be on the ballot in 2016 and 2018.

3.      AZGP achieves ballot status by submitting a petition to qualify as a new party pursuant to A.R.S. § 16-801. Section 16-801 requires a new party to submit a petition with valid signatures equal in number to one and one-third of the total vote for governor at the last preceding general election. This typically translates to a requirement of around 21,000 valid signatures. To comply with that requirement, AZGP must submit at least 25,000 signatures in total.

4.      When AZGP qualifies as a new party under Section 16-801, as we did in 2008, we

are entitled to ballot access for the following two election cycles (*i.e.*, in 2010 and 2012). Thereafter, we must submit another petition to qualify as a new party, unless we receive the requisite number of votes in the preceding general election, or meet the voter registration requirements to qualify for continued representation under A.R.S. § 16-804.

5.     AZGP has never met the requirements for continued representation under Section 16-804. Therefore, to qualify for the ballot in 2014, we had to submit another new party petition. We did so, but were unable to submit the petition in time to qualify us for the ballot in 2014. The petition thus qualified AZGP for the ballot in 2016 and 2018, but not 2014.

6.     Conducting a successful petition drive to qualify AZGP as a new party pursuant to Section 16-801 is an all-consuming endeavor. We cannot afford to hire petition circulators, and so we rely instead on a core group of about 10 volunteers. This means we must begin in January of the year following the November general election, working every weekend on Saturdays and Sundays for several hours each, until the next January or February – a process lasting 12 or 13 months in total.

7.     We establish weekly quotas to keep track of our progress and ensure that we will meet the deadline, but keeping up the necessary pace is a huge burden. We can't afford to miss a weekend of work, or we'll fall behind and miss the deadline, as we did in 2014.

8.     Dedicating so much time and effort just to place our candidates on the ballot is a massive drain on AZGP's limited resources. All the hours we spend collecting signatures are hours we could have spent campaigning and on party-building activities. The nearly endless cycle of petitioning also leads to a substantial level of burn-out among our petitioners and other

party members, since we know that even successful petition drives are very likely to be followed by yet another petition drive two election cycles later.

9.      For example, even though AZGP is qualified for the ballot in 2016 and 2018, we cannot reasonably expect to meet the requirements for continued representation under Section 16-804. As a result, we anticipate that we'll need to start our petition drive for 2020 right after the 2018 election. We'll also need to submit our petition early, in November 2019, to qualify our candidates for the presidential preference election in 2020, so we'll have no time to lose.

10.     The constant effort to qualify AZGP as a new party isn't just a drain on our resources – it inhibits our ability to build our party, because we are stuck in a perpetual status as a "new" party, which may or may not qualify to place its candidates on the ballot in the next election cycle. This uncertainty is itself a deterrent to our efforts to build and grow our party. Voters recognize that we are not entitled to the same status as the older, established political parties, and this dissuades many from joining or supporting AZGP, even though they agree with our platform.

11.     The statements and matters alleged herein are within my personal knowledge, and true and correct to the best of my knowledge and belief.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

First Declaration of Angel Torres

Date: 4/6/2016

Angel Torres