**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Libertarian Party, et al., | No. CV-16-01019-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Michele Reagan, | |
| Defendant. | |

On April 12, 2016, Plaintiffs filed this lawsuit challenging the constitutionality of A.R.S. §§ 16-321 and 16-322, as amended in 2015 by H.B. 2608. Doc. 1. On May 12, 2016, Plaintiffs filed an emergency motion for a temporary restraining order and preliminary injunction. Doc. 10. The Court ordered expedited briefing and held a hearing for May 24, 2016. Doc. 11. For the following reasons, the Court will deny Plaintiffs' motion for preliminary injunctive relief.

**I.  Background.**

Plaintiffs are the Arizona Libertarian Party ("AZLP") and Michael Kielsky, the party's chairman and a candidate for public office. Defendant Michele Reagan is the Arizona Secretary of State ("the Secretary"), the state officer responsible for administering elections in Arizona. Plaintiffs seek to enjoin the enforcement of certain portions of A.R.S. §§ 16-321 and 16-322, as amended in 2015 by H.B. 2608.

In Arizona, a candidate who wishes to have her name printed on a primary ballot must comply with certain statutory requirements. One requirement is that the candidate

file a valid nomination petition with the Secretary by a specified deadline. A.R.S. § 16-314(A). The petition must contain a minimum number of signatures from the relevant jurisdiction. *See* A.R.S. § 16-322(A). The required number of signatures varies depending on the office sought. *Id.* The purpose of the signature requirement is "to ensure that candidates have 'adequate support from eligible voters to warrant being placed on the ballot.'" *Jenkins v. Hale*, 190 P.3d 175, 176, ¶ 6 (Ariz. Ct. App. 2008) (quoting *Lubin v. Thomas*, 144 P.3d 510, 512, ¶ 15 (Ariz. 2006)).

On March 31, 2015, the Arizona Legislature passed H.B. 2608. Doc. 12 at 3. The Governor signed the bill into law on April 13, 2015, and it took effect on July 3, 2015. *Id.* H.B. 2608 made several changes to Arizona's election statutes that are relevant here.

H.B. 2608 changed the pool of persons from which candidates affiliated with a political party could collect signatures for a nomination petition. Under the old system, a candidate could collect signatures from electors who were qualified to vote in the candidate's primary election. *See* 2015 Ariz. Sess. Laws Ch. 293, §§ 2-3 (H.B. 2608). If a candidate's party chose to hold an open primary, the candidate could collect signatures from registered party members, registered independents, and unaffiliated voters. If a candidate's party chose to hold a closed primary, the candidate could collect signatures only from registered party members. After H.B. 2608, a candidate can collect signatures from "qualified signers," defined as (1) a registered member of the candidate's party, (2) a registered member of a political party that is not entitled to continued representation on the ballot under A.R.S. § 16-804, or (3) a voter who is registered as independent or having no party preference. A.R.S. §§ 16-321(F), 16-322(A).

In addition, candidates must now obtain the number of signatures equal to a certain percentage of qualified signers in the relevant jurisdiction, rather than a percentage of qualified electors who were qualified to vote in the candidate's primary election. A.R.S. § 16-322(A). For most offices, H.B. 2608 lowered the percentage of signatures of qualified signers the candidate must collect. *See* 2015 Ariz. Sess. Laws Ch. 293, § 3 (H.B. 2608).

1  The deadline by which candidates must submit nomination petitions this year is 2 June 1, 2016. Doc. 10 at 6. The deadline by which candidates must file as write-in 3 candidates is July 21, 2016. *Id.* The primary election is scheduled for August 30, 2016. 4 *Id.* at 5. The AZLP will have a closed primary this year – only its registered members 5 may vote. Doc. 12-1 at 3, ¶ 11.

6  Plaintiffs ask the Court to require the Secretary to place their candidates on the 7 primary election ballot if, by the June 1, 2016 deadline, they submit nomination petitions 8 containing the number of signatures that Sections 16-321 and 16-322 required before 9 their amendment in 2015. Doc. 5 at 5. Plaintiffs also ask the Court to require the 10 Secretary "to place their primary election write-in candidates on the general election 11 ballot pursuant to Section 16-645(E) if the candidates receive at least as many votes in 12 the primary election as the number of signatures" that would have been required before 13 the enactment of H.B. 2608. *Id.* at 6.

## II. Laches.

15  "Laches – unreasonable and prejudicial delay – requires denial of injunctive relief, 16 including preliminary relief." *Ariz. Pub. Integrity All. Inc. v. Bennett*, No. CV-14-01044- 17 PHX-NVW, 2014 WL 3715130, at *2 (D. Ariz. June 23, 2014). Over the last 25 years, 18 the Arizona Supreme Court has repeatedly cautioned that litigants should bring election 19 challenges in a timely manner or have their requests for relief denied on the basis of 20 laches. *See Lubin*, 144 P.3d at 511-12, ¶¶ 10-11 ("We caution, however, that a party's 21 failure to diligently prosecute an election appeal may in future cases result in a dismissal 22 for laches."); *Sotomayor v. Burns*, 13 P.3d 1198, 1200, ¶ 9 (Ariz. 2000) ("We repeat our 23 caution that litigants and lawyers in election cases must be keenly aware of the need to 24 bring such cases with all deliberate speed or else the quality of judicial decision making 25 is seriously compromised.") (quotation marks and citation omitted); *Harris v. Purcell*, 26 973 P.2d 1166, 1169, ¶ 15 (Ariz. 1998) ("In election matters, time is of the essence 27 because disputes concerning election and petition issues must be initiated and resolved, 28 allowing time for the preparation and printing of absentee voting ballots.") (citations

omitted); *Mathieu v. Mahoney*, 851 P.2d 81, 85 (Ariz. 1993) ("Special interest groups and the lawyers who represent them are aware of the difficult time pressures involved in ballot litigation. They have an affirmative duty to bring their challenges as early as practicable."); *Kromko v. Super. Ct. In & For Cty. of Maricopa*, 811 P.2d 12, 18 (Ariz. 1991) ("Moreover, disputes concerning election and petition matters must be initiated and heard in time to prepare the ballots for absentee voting to avoid rendering an action moot.").

Laches applies when there is both unreasonable delay and prejudice. *Sotomayor*, 13 P.3d at 1200, ¶ 8 (citation omitted). "In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice." *Ariz. Pub. Integrity All.*, 2014 WL 3715130, at *2 (citations omitted). To determine whether delay was unreasonable, a court considers the justification for the delay, the extent of the plaintiff's advance knowledge of the basis for the challenge, and whether the plaintiff exercised diligence in preparing and advancing his case. *Harris*, 973 P.2d at 1169-70, ¶¶ 16-18.

To determine whether delay has prejudiced a defendant, a court considers only prejudice that stems from the plaintiff's delay in bringing suit, not difficulties caused by the fact of having been sued. *Shouse v. Pierce Cty.*, 559 F.2d 1142, 1147 (9th Cir. 1977). Defendants are entitled to reasonable time to consider and develop their case, *McCarthy Western Constructors, Inc. v. Phoenix Resort Corp.*, 821 P.2d 181, 187 (Ariz. Ct. App. 1991), including "the opportunity to develop and present their own evidence, hire an expert, or prepare their cross-examination," *Mathieu*, 851 P.2d at 84-85.

To determine whether delay has prejudiced the administration of justice, a court considers prejudice to the courts, candidates, citizens who signed petitions, election officials, and voters. *Sotomayor*, 13 P.3d at 1200, ¶ 9; *Mathieu*, 851 P.2d at 85. As Arizona cases have noted, "[t]he real prejudice caused by delay in election cases is to the quality of decision making in matters of great public importance." *Sotomayor*, 13 P.3d at 1200, ¶ 9; *see also Mathieu*, 851 P.2d at 85. Unreasonable delay can prejudice the

administration of justice "by compelling the court to steamroll through . . . delicate legal issues in order to meet" election deadlines. *Lubin*, 213 Ariz. at 497-98 (quotation marks and citations omitted). "Late filings 'deprive judges of the ability to fairly and reasonably process and consider the issues . . . and rush appellate review, leaving little time for reflection and wise decision making.'" *Sotomayor*, 13 P.3d at 1200, ¶ 9 (quoting *Mathieu*, 851 P.2d at 86).

In *Arizona Public Integrity Alliance v. Bennett*, the Alliance and four voters sought to enjoin the Secretary of State from enforcing statutory requirement that candidates' nomination petitions contain a certain number of signatures from voters in at least three counties. 2014 WL 3715130, at *1. The plaintiffs had begun seriously examining the constitutionality of the county-distribution requirement in December 2013. *Id.* at *2. In the 2014 primary election cycle, nomination petitions were due by May 28, challenges to the petitions were due by June 11, and early primary voting was set for July 28. *Id.* On May 2, 2014, the plaintiffs provided notice to the state that they intended to seek an injunction, but they did not do so until May 15. *Id.* The court set an accelerated briefing schedule and a hearing for May 29. *Id.*

The court found that the plaintiffs had unreasonably delayed in bringing their suit because the plaintiffs had been considering a constitutional challenge since December 2013 and could have relied on sworn affidavits instead of waiting to file suit until after receiving their certified voting records. *Id.* The plaintiffs' unreasonable delay prejudiced the defendant because he did "not respond on the merits for inability to marshal facts and authorities in the short time left." *Id.* at *3. The court concluded that "[h]ad Plaintiffs filed suit promptly, a motion for preliminary injunction could have been briefed and decided without unreasonable burden on the Defendant, the Court, and the election process." *Id.* at *2. The court held that the plaintiffs' request for preliminary injunctive relief was barred by laches. *Id.* at *1.

This case has followed almost the same timeline. H.B. 2608 became effective on July 3, 2015. In late August, Plaintiff Kielsky told State Election Director Eric Spencer

that the AZLP intended to challenge the constitutionality of the new law. Doc. 12-1 at 3-4, ¶¶ 12-13. Plaintiffs were therefore aware of the underlying basis for their challenge by August 2015.

Despite this knowledge, Plaintiffs did not file their complaint until April 12, 2016 (Doc. 1), and did not file their "emergency" motion for a temporary restraining order until May 12, 2016 (*see* Doc. 10), less than three weeks before the June 1 deadline for nomination petitions. As a result, the Court has been forced to set an expedited briefing schedule and hold a hearing on Plaintiffs' motion only eight days before the deadline.

Plaintiffs argue that their delay was justified by the Secretary's unreasonable delay in releasing the 2016 petition signature requirements on March 21, 2016. Doc. 14 at 2-3. The Court is not persuaded. First, the Secretary did not delay unreasonably. As defense counsel noted during oral argument, the Secretary was required by statute to use the March 1, 2016 voter registration data to calculate the primary election signature requirements. *See* A.R.S. § 16-322(B). Second, Plaintiffs' own complaint and exhibits show that they had access to the necessary information months ago. Plaintiffs' complaint attaches charts detailing the 2012 and 2014 petition signature requirements for Maricopa County. Doc. 1 at 32-33. Plaintiffs also cited the Secretary's January 2016 voter registration statistics. *Id.* at 9, ¶ 25. Even a cursory examination of this data reveals that H.B. 2608 significantly increased the number of signatures AZLP candidates must obtain to secure a place on the primary ballot. This evidence fully supports the claims made by Plaintiffs in this case – that AZLP members are required to obtain an unconstitutionally high percentage of signatures from AZLP members, or to seek signature from non-AZLP voters. Plaintiffs were not required to wait for the March 21, 2016 numbers before asserting these arguments. *See Ariz. Pub. Integrity All.*, 2014 WL 3715130, at \*2 ("Plaintiffs say they delayed their filing because it took a long time to obtain Plaintiffs' certified voting records. . . . [T]hey could have attested in sworn affidavits that they are qualified electors. The time it took to obtain certified voting records does not justify a delay."). Plaintiffs have not provided an adequate justification for their delay.

The Secretary argues, with some persuasive force, that Plaintiffs' unreasonable delay prejudiced her "ability to fully develop facts and arguments for the Court to assess in ruling on whether to grant" Plaintiffs' request for preliminary injunctive relief. Doc. 12 at 5-6. Laches is designed to protect a defendant from this precise type of prejudice. *See Mathieu*, 851 P.2d at 84-85 ("Defendants did not have the opportunity to develop and present their own evidence, hire an expert, or prepare their cross-examination. Defendants should have had this opportunity even if plaintiffs did *not* present evidence[.]") (emphasis in original).

More importantly, Plaintiffs' delay has prejudiced the administration of justice. Plaintiffs' delay left the Court with only 18 days before the petition-submission deadline to obtain briefing, hold a hearing, evaluate the relevant constitutional law, rule on Plaintiffs' motion, and advise the Secretary and the candidates which statutory petition requirement applies. *See* Doc. 12 at 5-6. What is more, signature gathering is well under way. Nomination petitions are due next week. Candidates who have been collecting signatures under the current law could be greatly disadvantaged by any injunctive relief that changes the rules at the last minute. Doc. 12 at 4.[1]

In summary, the Court finds that Plaintiffs unreasonably delayed seeking preliminary relief. The Court also finds that the delay prejudiced Defendant and the administration of justice. The Court therefore will apply the doctrine of laches.

In some cases, laches requires dismissal of the entire claim, while in others it justifies only the denial of expedited relief. *Compare Harris*, 973 P.2d at 1169-71 (affirming dismissal of complaint challenging certification procedure for ballot proposition), *with Ariz. Pub. Integrity All.,* 2014 WL 3715130, at *2-3 (denying plaintiffs' request for preliminary injunctive relief, but allowing plaintiffs' constitutional challenge to county signature requirements to proceed). Like the plaintiffs in *Arizona*

---

[1] At oral argument, Plaintiffs' counsel asserted that all AZLP candidates have been collecting signatures in compliance with the pre-H.B. 2608 signature requirements in anticipation of injunctive relief, but Plaintiffs have provided no evidence to verify this broad assertion and there is no time to do so now.

*Public Integrity Alliance*, Plaintiffs challenge a signature requirement that will continue to apply in future elections if it is not invalidated by a court or revised by the Legislature. This is different than a challenge to a ballot proposition will either be passed or defeated in the election. The Court therefore concludes that laches should bar only Plaintiffs' request for emergency relief. The merits of the case may continue without the prejudice caused by the late-filed request for that relief.

**IT IS ORDERED** that Plaintiffs' emergency motion for a temporary restraining order and preliminary injunction (Doc. 10) is **denied**. On or before **June 10, 2016**, the parties shall jointly file a memorandum setting forth their views of how the remainder of this case should proceed.

Dated this 27th day of May, 2016.

David G. Campbell
United States District Judge