Mark Brnovich
Attorney General

James Driscoll-MacEachron (027828)
Kara M. Karlson (029407)
Assistant Attorneys General
1275 W. Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-3333
Fax: (602) 542-8308
james.driscoll-maceachron@azag.gov
kara.karlson@azag.gov

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The Arizona Libertarian Party and Michael Kielsky,<br><br>    Plaintiffs,<br><br>vs.<br><br>Michele Reagan,<br><br>    Defendant. | Case No: CV-16-01019-PHX-DGC<br><br>**SECRETARY OF STATE MICHELE REAGAN'S RESPONSE TO PLAINTIFFS MOTION FOR A PRELIMINARY INJUNCTION** |

Secretary of State Michele Reagan requests that the Court deny the Plaintiffs' request for an injunction that would change the law governing the number of write-in votes necessary to advance from the primary election to the general election. The Court should deny the Plaintiffs' Motion because Plaintiffs have not shown that the current requirement that a write-in candidate show a reasonable modicum of support is unconstitutional or that injunctive relief is necessary.

In support of their Motion, the Plaintiffs have submitted a nearly identical memorandum of points and authorities to the memorandum they submitted earlier in this litigation. As set out in the Secretary's response to the Plaintiff's first motion, the Plaintiffs have failed to show that an injunction is warranted. An injunction is

particularly inappropriate with regard to the requirement that write-in candidates receive a reasonable modicum of support in order to move on to the general election.  There is no possibility of "forced association" because only Libertarian party members will vote in the Libertarian Party's closed primary.  Binding Ninth Circuit precedent also establishes that State may require write-in candidates to demonstrate an even greater degree of support than Arizona law.  Accordingly, neither the petition signature requirement that was the subject of the Plaintiffs' previous motion nor the requirement in A.R.S. § 16-645(E) setting the amount of votes required for a write-in candidate to reach the general election imposes a severe burden under the *Anderson* balancing test.  The Plaintiffs thus have not shown a likelihood of success, and they have not shown that any other factor demonstrates the need for an injunction with regard to write-in candidates.  The Plaintiffs' motion for a preliminary injunction should therefore be denied.

**I.     Background**

As set out in the Secretary's earlier response, the Libertarian Party has alternated between an open primary and a closed primary.  Dkt. No. 12, at 2.  The signature requirements during that time remained relatively constant—and extremely low.  For example, in 2014, a Libertarian Party candidate needed to gather only 133 signatures to run for statewide office.  *See* 2014 Partisan Signature Requirements, *available at* http://apps.azsos.gov/election/2014/Info/Statewide_Partisan_Signature_Requirements.pdf.  At the time, there were 3,124,712 registered voters, and 26,595 were registered Libertarians.  March 1, 2014 Voter Registration Report, *available at* http://apps.azsos.gov/election/voterreg/2014-03-01.pdf.  A Libertarian candidate for statewide office thus had to collect signatures from .00426% of the registered voters in Arizona and only 0.5% of Libertarian voters.  Requirements for other offices were similarly small.  *See, e.g.*, 2014 Partisan Signature Requirements, *supra.*

In this lawsuit, the Plaintiffs challenge the amendments made in HB 2608.  House Bill 2608 made several changes to the signature requirements for candidates to be placed

on the primary ballot.  The requirements to be placed on the primary ballot are now measured as a percentage of the qualified signers in the relevant district rather than a percentage of registered party members.[1]  A.R.S. § 16-322.  House Bill 2608 also lowered the percentage of signatures required.  *See* Final Revised Fact Sheet for H.B. 2608, *available at* http://www.azleg.gov/legtext/52leg/1r/summary/s.2608gov_asenacted.pdf.  Thus, under the previous formula, a candidate for statewide office had to collect signatures from a number equal to 0.5% of the members of his or her party; after HB 2608, the candidate needs to collect signatures from 0.25% of the qualified signers.  *See id.*  House Bill 2608 did not change the requirement that write-in candidates receive votes equal to the number of signatures a candidate had to collect to be placed on the primary ballot.

Write-in candidates do not need to submit nomination petitions to participate in an election.  A.R.S. § 16-312.  If a write-in candidate chooses to participate in a primary, they must file on the fortieth day before the primary election.  A.R.S. § 16-312.  To proceed on to the general election from the primary, a write-in candidate must "receive[] a number of votes equivalent to at least the same number of signatures required by § 16-322 for nominating petitions for the same office."  A.R.S. § 16-645(E).

The period for submitting nomination petitions for the primary election has closed.  A.R.S. § 16-311(A).  More than two hundred candidates submitted sufficient petitions for statewide and legislative races, including multiple Libertarian candidates.  2016 Election Information, *available at* http://apps.azsos.gov/election/2016/Candidates/PrimaryCandidates.htm.  Many more candidates likely submitted petitions for city and county races.  Again, those candidates likely included Libertarian candidates.  *See, e.g.*, Maricopa County 2016 Primary Election Official Candidate Listing, *available at*

---

[1] "Qualified signers" include registered members of the candidate's party, registered members of parties not entitled to continued representation, and voters registered independent or no party preferred.  A.R.S. § 16-321(F).

3

http://recorder.maricopa.gov/electionspdf/2016%20PRIMARY%20CANDIDATE%20LISTING.pdf.  All of those candidates were required to submit signatures consistent with the requirements of A.R.S. §§ 16-321 and -322.

## II.     Legal Standard for Preliminary Injunctive Relief

As stated in the Secretary's earlier response, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  In the Ninth Circuit, courts assess a request for preliminary injunctive relief under alternative standards.  Under the first standard, a plaintiff must show "(1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).  Alternatively, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).  Under either standard, the Plaintiffs bear a heavy burden in attempting to show they are entitled to a preliminary injunction.  *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1312 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 480 (2015).

## III.    The Plaintiffs Have Not Shown that the Court Should Enter an Injunction Changing the Reasonable Modicum of Support Requirement for Write-in Candidates.

The Plaintiffs frame their new motion as an attack upon A.R.S. §§ 16-321 and -322.  For the reasons given in the Secretary's earlier response, the Plaintiffs have not carried their burden to show they are likely to succeed in showing A.R.S. §§ 16-321 and -322 are unconstitutional.  *See generally* Dkt. No. 12.  The Plaintiffs also fail to acknowledge the effect of this Court's May 27th Order.  This Court rejected the

1  Plaintiffs' request for an injunction requiring the Secretary to impose a different
2  signature requirement for primary candidates.  Dkt. No. 17, at 8.  Sections 16-321 and -
3  322 therefore provided the governing rule for candidates submitting signatures to access
4  the primary election.  *Id.*  The Plaintiffs now seek to implement a rule for write-in
5  candidates that did not apply to primary candidates.  But a State may require write-in
6  candidates to receive at least the same number of votes as the number of signatures that
7  the candidate would have needed to gain a place on the primary ballot, and no other
8  factor favors entering an injunction here.  The Plaintiffs thus have not carried their
9  burden to show that the injunction they seek is necessary.

**A. The Plaintiffs Have Not Shown a Likelihood of Success.**

The Plaintiffs have failed to show a likelihood of success for two reasons:  First, the Plaintiffs have not shown that A.R.S. §§ 16-321 and -322 are unconstitutional.  Second, the Plaintiffs have not shown that applying A.R.S. § 16-645(E) to require write-in candidates to show the same level of support as candidates already in the primary is unconstitutional.

As set out in the Secretary's first response, the Plaintiffs must show a constitutional violation under the *Anderson*/*Burdick* framework.  "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections."  *Burdick v. Takushi*, 504 U.S. 428, 433(1992).  Thus, "[i]n considering a constitutional challenge to an election law, we must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments against the precise interests put forward by the State as justifications for the burden imposed by its rule."  *Nader v. Cronin*, 620 F.3d 1214, 1217 (9th Cir. 2010) (per curiam) (internal quotation marks omitted).  The extent of the burden on the Plaintiffs' rights determines the level of scrutiny.  The Ninth Circuit will apply strict scrutiny if an election law "imposes a severe burden."  *Nader v. Brewer*, 531 F.3d 1028,

1035 (9th Cir. 2008).  In contrast, rational basis review applies when there is only a de minimis burden on the Plaintiffs' rights.  *Ariz. Libertarian Party*, 798 F.3d at 732.

It is the Plaintiffs' obligation to establish a severe burden if they wish to avoid rational basis review.  *Id.*  In assessing the burden on the Plaintiffs' rights, "[t]he question is whether 'reasonably diligent' minor party candidates can normally gain a place on the ballot, or if instead they only rarely will succeed."  *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 762 (9th Cir. 1994) (quoting *Storer v. Brown*, 415 U.S. 724, 742 (1972)).  Courts must consider "the entire scheme regulating ballot access" in assessing the burden.  *Id.*  And the Plaintiffs must offer specific evidence to demonstrate the severity of the burden.  *See Ariz. Libertarian Party*, 798 F.3d at 731 (noting plaintiff's failure to provide evidence); *see also Libertarian Party of Fla. v. Florida*, 710 F.2d 790, 794 (11th Cir. 1983) ("Plaintiffs failed to present factual evidence that they were precluded from obtaining ballot status by the challenged regulations.  Conclusory allegations cannot prevail.").

Where rational basis review applies, the Plaintiffs are also required to show that there is no rational basis for the challenged law.  *Ariz. Libertarian Party*, 798 F.3d at 732.  Courts "may look to any conceivable interest promoted by the challenged procedures, whether or not the state cited that interest in its briefs."  *Libertarian Party of Wash.*, 31 F.3d at 763.

**1. The Requirements of A.R.S. §§ 16-321 and -322, Which Require Candidates to Demonstrate a Reasonable Modicum of Support, Are Constitutional.**

The Plaintiffs assert that A.R.S. §§ 16-321 and -322 are unconstitutional, but these statutes do not severely burden the Plaintiffs' rights, and they serve a compelling state interest.

Plaintiffs do not dispute that Arizona may require candidates to gather signatures on nomination petitions in order to show a reasonable modicum of support.  Mem. at 7.  And the Supreme Court has repeatedly upheld signature requirements far in excess of the

6

requirements at issue here. In *Jenness v. Fortson*, 403 U.S. 431, 432, 442 (1971), the Court upheld a requirement that a candidate gather signatures equaling "at least 5% of the number of registered voters at the last general election for the office in question." In *American Party of Texas v. White*, 415 U.S. 767, 785-88 (1974), the Court upheld a statute requiring parties to gather 22,000 signatures in fifty-five days. The Supreme Court has since observed that "*Jenness* and *American Party* establish with unmistakable clarity that States have an undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986) (internal quotation marks omitted) (upholding requirement that candidates from minor parties receive 1% of all votes cast for a particular office on a primary election ballot). As one court has observed, "there is a range of fees and signature requirements that are constitutional, and the [State] is free to choose its ballot access requirements from that constitutional spectrum." *Green v. Mortham*, 155 F.3d 1332, 1339 (11th Cir. 1998).

Because the Plaintiffs cannot dispute that Arizona may permissibly require Libertarian candidates to comply with a reasonable signature requirement, the Plaintiffs instead argue that the signature requirement should be measured against the pool of registered Libertarians rather than the pool of qualified signers that may sign nomination petitions. But the cases the Plaintiffs cite do not support the Plaintiffs' argument.[2] For example, the Plaintiffs cite *Storer v. Brown* as support, Mem. at 7-8, but the eligible pool in *Storer* was "the available pool of *possible signers*."[3] *Id.* at 739 (emphasis added).

And, more significantly, the Ninth Circuit upheld a reasonable modicum of support requirement that was not measured as a percentage of voters in the election the candidate sought to access. In *Lightfoot v. Eu*, 964 F.2d 865, 867, 871 (9th Cir. 1992)

---

[2] The Plaintiffs also misstate the required number of signatures in at least one instance. The Plaintiffs assert that a candidate in LD18 needs to submit 356 signatures. *See* Mem. at 10; Decl. of J. Heald ¶ 4. But only 230 signatures are needed for a Libertarian candidate in LD18. *See* Running for Legislative Office, *supra*.

[3] In *Storer*, California required signatures equal to 5% of the total vote cast in the last general election, which would have been 325,000 signatures. *Id.*

1  (quoting Cal. Elec. Code § 6661(a) (West. Supp. 1992)), the Ninth Circuit rejected the
2  Libertarian Party's challenge to a requirement that write-in candidates in a primary
3  election receive votes "'equal in number to 1 percent of all votes cast for the office at the
4  last preceding general election at which the office was filled.'"  The Ninth Circuit
5  observed that "[v]ote thresholds like that prescribed by 6661(a) are quite common." *Id.*
6  at 867.  The Ninth Circuit found that it was a permissible measure of support despite the
7  fact "that it was impossible for any Libertarian write-in candidate to meet the 1%
8  threshold in the 1988 primary" because "the small number of voters eligible to vote in
9  the Libertarian primary is not an impediment created by the State." *Id.* at 870.  The
10 Ninth Circuit therefore affirmed California's requirement that write-in candidates show a
11 reasonable modicum of support based upon votes cast for that office in the previous
12 general election.
13     Here, Arizona provides for a pool of qualified signers defined by current
14 registration numbers that is far below the percentage permitted in the relevant Supreme
15 Court precedent or in the Ninth Circuit's decision in *Lightfoot*.  Candidates need not
16 gather signatures from more than 5% of qualified signers, and candidates for most
17 offices only need to gather signatures from 0.25% to 0.5% of the qualified signers.
18 A.R.S. § 16-322.  This is far below the signature requirements that courts have regularly
19 upheld.[4]   The Plaintiffs argue instead that the write-in requirements "are all but
20 insurmountable when measured as a percentage of Libertarians alone." Mem. at 10.  But
21 the Ninth Circuit rejected a similar argument in *Lightfoot*, 964 F.2d at 870, noting that
22 "[t]he Libertarian Party could broaden the number of voters that participate in the
23 primary by opening tis currently closed primary to non-Libertarians" or, if unwilling to
24 do that, it "may broaden its voter base by increasing its membership."

---

[4] Arizona also provides more time to gather signatures than the state law in many of the cases discussed above, as there is no set start date for signature gathering for candidate nomination petitions.  *See Am. Party*, 415 U.S. 785-88 (upholding requirement that 22,000 signatures be gathered in 55 days).

8

1    The Plaintiffs also failed to offer sufficient facts to establish the reasonable
2 modicum of support set out in A.R.S. §§ 16-321 and -322 imposes a severe burden.  As
3 explained in the Secretary's earlier response, neither the declarations attached to the
4 Complaint nor the declarations attached to the Plaintiffs' first Motion demonstrate a
5 factual basis for a severe burden.  Dkt. No. 12 at 12-13.  The Plaintiffs now attach yet
6 another declaration, this one from Jonathan Apirion, a candidate who complains that
7 "[*s*]*ometimes* Independents were not willing to support a Libertarian" and that the
8 process was inefficient because "Libertarians want[ed] to spend more time talking about
9 policy issues."  Apirion Decl. ¶ 7 (emphasis added).

10   The Apirion declaration does not show a severe burden for at least three reasons.
11 First, the Supreme Court observed that "[h]ard work and sacrifice by dedicated
12 volunteers are the lifeblood of any political organization," as it upheld a requirement that
13 a party must gather 22,000 signatures in 55 days.  *American Party*, 415 U.S. at 7.  The
14 new declaration does not show a burden anywhere near that level.  Second, the alleged
15 burden the candidate describes is not unique.  Candidates from all parties must undertake
16 the time-consuming work of collecting valid signatures from qualified signers.  *See, e.g.*,
17 Hank Stephenson, *Candidates face legal challenges that aren't always worth fighting*,
18 Ariz. Capitol Times (June 17, 2016) (describing challenges to several candidates'
19 signatures), *available at* http://azcapitoltimes.com/news/2016/06/17/candidates-face-
20 legal-challenges-that-arent-always-worth-fighting.  Third, Apirion's declaration refers to
21 a straightforward path to obtaining sufficient signatures.  He estimated that he and his
22 wife received three or four signatures per hour by going door to door.  Apirion Decl. ¶ 7.
23 If he had just six other volunteers gathering signatures, they could have gathered
24 sufficient signatures in less than thirty hours of signature gathering.  The Plaintiffs thus
25 have not shown a severe burden on their rights.
26   The Plaintiffs also attempt to demonstrate a severe burden by arguing that the
27 inclusion of non-party members in the definition of "qualified signer" burdens their
28

9

associational rights, citing *California Democratic Party v. Jones*, 530 U.S. 567 (2000) and this Court's decision in *Arizona Libertarian Party v. Brewer*, No. 02-144-TUC-RCC (Sept. 27, 2007). But neither case stands for that principle. In both cases, the associational burden was caused by non-party members *voting in the primary* over the party's objection. *Jones*, 530 U.S. at 577; Ex. 2, *Ariz. Libertarian Party v. Brewer* Order at 5-6 ("This creates the danger the Libertarian candidate *will be selected* by voters who are not Libertarians."). Neither case dealt with signatures on nomination petitions, nor does their logic extend to nomination petition signatures. *See Rogers v. Corbett*, 468 F.3d 188, 198 (3d Cir. 2006) (holding that there was no forced association in requiring candidates to seek signatures from all registered voters); *see also Munro*, 479 U.S. at 538 (upholding reasonable modicum of support based on percentage of all voters in a blanket primary). Individuals signing nomination petitions are not voting for candidates, and they do not determine who will be the Libertarian candidate when the Libertarian Party runs a closed primary: only Libertarian voters do. Sections 16-321 and -322 simply ensure that candidates have a reasonable modicum of support in order to begin the path to the general election. If the Libertarian Party opts for a closed primary, its members choose which candidate advances to the general election.

As with the reasonable modicum of support requirement, the Ninth Circuit has held that the associational burden described in *Jones* is a factual issue. *Ariz. Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277, 1282 (9th Cir. 2003) ("[T]he risk that nonparty members will skew either primary results or candidates' positions [is] a factual issue."). The Plaintiffs have not submitted facts showing that allowing independents to sign petitions caused any Libertarian candidate to modify his or her position or that a candidate with non-Libertarian positions accessed—much less affected the result of—the primary as a result of the requirements in A.R.S. §§ 16-321 and -322.

Because the Plaintiffs have not shown more than a de minimis burden, "the State 'need demonstrate only that [the statute at issue] is rationally related to a legitimate

interest.'"  *Ariz. Libertarian Party*, 798 F.3d at 732 (quoting *Cronin*, 620 F.3d at 1218). Here, Arizona has compelling interests in requiring a reasonable modicum of support from candidates and in preserving the integrity of the election.

"There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot."  *Jenness*, 403 U.S. at 442; *see also Andress v. Reed*, 880 F.2d 239, 242 (9th Cir. 1989) ("California has a legitimate interest to ensure the seriousness of a candidate for statewide office."); *Green*, 155 F.3d at 1339 (recognizing "strong regulatory interests" in requiring a significant modicum of support).  And Arizona has a compelling interest in ensuring that there is a reasonable modicum of support for each race.  *See Norman v. Reed*, 502 U.S. 279, 295 (1992) (holding that "the Party [may not] cite its success in the city district as a sufficient condition for running candidates in the suburbs."); *see also Rogers*, 468 F.3d at 196-97 (rejecting argument that sufficient support to be recognized as a party establishes sufficient support for a candidate). Sections 16-321 and -322 directly serve this interest by ensuring a reasonable modicum of support for each individual candidate in each election.

Sections 16-321 and -322 also serve Arizona's compelling interest in ensuring the integrity of elections by deterring sham candidates.  *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364-365 (1997) ("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials."); *see also John Doe No. 1 v. Reed*, 561 U.S. 186, 197 (2010) ("The State's interest in preserving the integrity of the electoral process is undoubtedly important.").  For example, in *Arizona Green Party v. Bennett*, No. CV 10–1902 PHX DGC, 2010 WL 3614649, at *1 (D. Ariz. Sept. 9, 2010), the plaintiffs alleged that "nine candidates [who were] not true members of AGP, but are persons who registered with AGP, applied to run as write-in candidates, and obtained one or more write-in votes in the August primary election solely for the purposes of appearing as

AGP candidates in November and thereby drawing votes away from the Democratic Party." Indeed, just this election cycle the new requirements may have prevented a potentially sham candidate from running in the Libertarian Party. Laurie Roberts, *Is Arpaio up to campaign shenanigans?*, The Ariz. Republic (June 8, 2016) (describing challenge to allegedly sham Libertarian candidate for Sheriff in Maricopa County), *available at* http://www.azcentral.com/story/opinion/op-ed/laurieroberts/2016/06/08/roberts-arpaio-up-campaign-shenanigans/85610794/. Amending A.R.S. §§ 16-321 and -322 made it more difficult to undermine the integrity of the election through this kind of sham candidacy, and Arizona "was clearly entitled to raise the ante for ballot access" given these concerns. *See Munro*, 479 U.S. at 196.

The Libertarian Party claims that these interests do not apply to the to the Libertarian Party primary, Mem. at 13-14, but the Ninth Circuit has already rejected a similar argument. It found that a one percent threshold for write-in candidates "serves to avoid voter confusion by requiring that a candidate have sufficient support from within a party before his or her name will be associated with that party on the ballot." *Lightfoot*, 964 F.2d at 871. Allowing a candidate to pass on to the general election "as the Libertarian candidate even if he had obtained but one write-in vote, so long as no other candidate received more than one vote . . . would be likely to mislead voters about the degree of Libertarian support [the candidate] enjoyed." *Id.* The Plaintiffs have therefore failed to show the lack of a state interest and cannot show a likelihood of success in their pending motion.

**2. Arizona May Constitutionally Require Write-in Candidates to Receive Votes Equal to the Number of Signatures Necessary to Run in the Primary.**

The Plaintiffs seek an injunction to alter the requirements for write-in candidates, but they have not provided an authority for such an injunction. There is no danger of "forced association," because the Libertarian Party chose to hold a closed primary. And States may require write-in candidates to show support at least equal to that of

12

1 candidates who submitted petitions.  Primary candidates in Arizona complied with
2 A.R.S. §§ 16-321 and -322.  *See* Dkt. No. 17 (denying request for injunction against
3 A.R.S. §§ 16-321 and -322).  The Plaintiffs thus have not shown a likelihood of success
4 that write-in candidates should not be held to the same standard.

5 As discussed above, the Ninth Circuit upheld a requirement that write-in
6 candidates receive votes equal to one percent of the total votes cast for that office in the
7 last election.  *Lightfoot v. Eu*, 964 F.2d at 867, 871.  The Ninth Circuit upheld that
8 requirement despite the fact that it required write-in candidates to receive more votes
9 than could have been cast in the Libertarian primary.  *Id.* at 870.  The Supreme Court of
10 Pennsylvania similarly observed that a requirement that write-in candidates receive the
11 same number of votes as candidates submitted on nomination petitions "promotes
12 'equal' elections by requiring every candidate who desires to appear on the general
13 electoral ballot to have satisfied the same condition—the show of support by a set
14 number of people."  *Shankey v. Staisey*, 257 A.2d 897, 899 (Pa. 1969).

15 In *Burdick v. Takushi*, 504 U.S 428, 436 (1992), the Supreme Court also held that
16 a requirement that nonpartisan candidates that did not submit nominating petitions must
17 "receive 10 percent of the primary vote or the number of votes that was sufficient to
18 nominate a partisan candidate, whichever number was lower."  Despite the fact that less
19 than a third of nonpartisan candidates over the prior ten years had made it to the general
20 election, the Supreme Court held that "it can hardly be said that the laws at issue . . .
21 unconstitutionally limit access to the ballot."  *Id.* at 434, 436.

22 Arizona may therefore require write-in candidates to receive at least as many
23 votes as a candidate needed to collect to participate in the primary.  Here, primary
24 candidates gathered signatures consistent with A.R.S. §§ 16-321 and -322.  Therefore,
25 Plaintiffs are not likely to succeed in showing that write-in candidates must be excused
26 from the same showing of support as other primary candidates.

27
28

13

**B. The Plaintiffs Have Not Been Irreparably Harmed.**

The Plaintiffs have also failed to show irreparable harm. They cite *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011) for the principle that a loss of First Amendment rights constitutes an irreparable harm, Mem. at 13-14, but, unlike *Thalheimer*, the statutes challenged here do not ban speech. Instead, this is an area where courts repeatedly observe that States must regulate elections and that those regulations "inevitably affect[]—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). And, even assuming that Plaintiffs were correct, "the assertion of First Amendment rights does not automatically require a finding of irreparable injury." *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989). The presumption of irreparable harm should not apply here, where Arizona may appropriately regulate Plaintiffs' ballot access, and the challenged statutes do not severely burden the Plaintiffs' rights.

In particular, it should not apply where the Plaintiffs seek to excuse write-in candidates from showing the same reasonable modicum of support as other candidates in the primary. And, to the extent that the Plaintiffs suggest that write-in candidates will run unopposed, they have not shown an irreparable harm would follow from requiring the Libertarian Party voters to vote for the only candidate running for that office— particularly where there is no allegation that it would be impossible for a write-in candidate to receive sufficient signatures. *See Lightfoot*, 964 F.2d at 870 (rejecting argument that the State was responsible for the inability of write-in candidates to meet the threshold to move on to the general election).

**C. The Balance of Equities and the Public Interest Do Not Favor a Preliminary Injunction.**

In a claim against the government, the public interest merges with the balance of the equities. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Tracy Rifle and Pisto LLC v.*

14

1. *Harris*, 118 F. Supp. 3d 1182 (E.D. Cal. 2015), *aff'd* 2016 WL 715989 (9th Cir. 2016). Neither factor supports a preliminary injunction in this case.

First, the Plaintiffs' delay weighs against them under the balance of the equities. *W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) ("The District Court also properly exercised its discretion in weighing Appellant's delay in seeking a preliminary injunction"); *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."). Plaintiffs delayed filing this lawsuit until a year after the Governor signed HB 2608, and they delayed another month before filing their first motion seeking injunctive relief.

The Plaintiffs' second motion exacerbates the delay, because the Plaintiffs' now seek relief that will alter the path of the primary election midstream. The Plaintiffs' delay prejudices at least three groups. First, it prejudices candidates that gathered signatures in compliance with A.R.S. §§ 16-321 and -322. If the Plaintiffs receive the injunction they request, those candidates may well be challenged by candidates that need not show the same modicum of support. Second, it prejudices potential write-in candidates. By the time the Plaintiffs' motion is resolved, the deadline to file as a write-in candidate will have passed. *See* Election Calendar & Upcoming Events, *available at* http://www.azsos.gov/elections/elections-calendar-upcoming-events. The Plaintiffs' preferred candidates may well be aware of this lawsuit, but, if the Plaintiffs succeed, other potential write-in candidates will have made their decision on whether to run based on law that would not be in effect for the primary. Third, it prejudices voters in the general election. As the Ninth Circuit has held that allowing write-in votes access to the general election without a reasonable modicum of success can "mislead voters about the degree of Libertarian support [the candidate] enjoyed." *Lightfoot*, 964 F.2d at 871. The Plaintiffs' delay should therefore tip the balance of equities against the Plaintiffs' late request for injunctive relief.

15

At the same time, entering the requested injunction would also harm the State of Arizona. *See Maryland v. King,* 133 S.Ct. 1, 3 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (internal quotation marks and citation omitted); *see also Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 203 (2008) ("When evaluating a neutral, nondiscriminatory regulation of voting procedure, we must keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people.") (internal quotation marks omitted); *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 Fed. Appx. 89, 94 (9th Cir. 2009) (noting state interest in enforcement of law in challenge to criminal statute). That harm is particularly acute in the context of election law, where "[a] State indisputably has a compelling interest in preserving the integrity of its election process." *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

## IV. Conclusion

The signature requirements in A.R.S. §§ 16-321 and -322 are well under the constitutional threshold and they directly serve compelling state interests. Those interests is even more compelling where, as here, the Plaintiffs seek to excuse write-in candidates from demonstrating the same level of support as candidates already running in the primary. Plaintiffs' delay also strongly cuts against their requested relief, as the deadline for write-in candidates to file will have passed by the time this motion is resolved. The Secretary therefore requests that this Court deny the Plaintiffs' second Motion for a Preliminary Injunction.

Respectfully submitted this 21st day of <u>June</u>, <u>2016</u>.

          Mark Brnovich
          Attorney General

          s/ James Driscoll-MacEachron
          James Driscoll-MacEachron
          Kara M. Karlson
          Assistant Attorneys General
          Attorneys for Defendant

I certify that I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter this this 21st day of June, 2016.

Oliver B. Hall
Center for Competitive Democracy
1835 16th St. NW, #5
Washington, DC  20009
Attorney for Plaintiffs

  s/ Maureen Riordan

#5159403